DEPARTMENT OF NATURAL RESOURCES v HERMES

Docket No. 44760. Submitted May 13, 1980, at Marquette.—Decided November 19, 1980.

The Michigan Department of Natural Resources brought an action in Alger Circuit Court against William Hermes for condemnation and confiscation of boxes of lake trout previously seized. William F. Hood, J., ordered condemnation and confiscation and further ordered that the property be sold or otherwise disposed of and the proceeds of such sale paid to the State Treasury and credited to the Game Protection Fund. Defendant appeals, alleging that the trial court erred in admitting evidence seized as a result of a warrantless search and subjecting the fish to condemnation and confiscation and that he was improperly charged as a consignee. *Held:*

1. The warrantless search of defendant's vehicle was proper since the police officer who conducted the search had probable cause to believe a violation of a rule requiring trout to be tagged had occurred and that such untagged trout could be located in the vehicle. Evidence thereafter found to violate the labeling requirement of the commercial fishing law was admissible under the plain view exception to the requirement of a search warrant.

2. The warrantless search of defendant's vehicle by a police officer following a departure from and return to the location of the vehicle was proper since defendant was put on notice that

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 602.
[2] 68 Am Jur 2d, Searches and Seizures § 100.
[3] 29 Am Jur 2d, Evidence § 415.
  68 Am Jur 2d, Searches and Seizures §§ 85, 87.
  "Fruit of the poisonous tree" doctrine excluding evidence derived from information gained in illegal search. 43 ALR3d 385.
[4] 68 Am Jur 2d, Searches and Seizures §§ 16, 43, 45, 99.
[5] 73 Am Jur 2d, Statutes §§ 145, 146.
[6] 73 Am Jur 2d, Statutes § 263.
[7, 9] 35 Am Jur 2d, Fish and Game § 50.
  67 Am Jur 2d, Sales §§ 278, 279.
  73 Am Jur 2d, Statutes § 213.
[8] 35 Am Jur 2d, Fish and Game §§ 42, 49, 50.

the officer was returning to his post to check regulations, the officer was not absent for such a length of time as to allow defendant ample opportunity to destroy any evidence, and defendant's vehicle was parked on a public highway.

3. Defendant was properly charged as a consignee which is construed, under the commercial fishing law, to include one who purchases or delivers fish.

Affirmed.

1. Evidence — Suppression of Evidence — Preservation of Issue.

The issue of suppression of evidence is properly preserved for review where a motion to suppress such evidence is made in the trial court.

2. Searches and Seizures — Reasonableness — Burden of Proof — Evidence — Statutes — Administrative Rules.

The burden of proving the reasonableness of a search and seizure is on the state where evidence obtained as a result thereof is offered in a condemnation action under the Commercial Fishing Law (MCL 308.1b, 308.201; MSA 13.1491[2], 13.1568[1], 1977 AACS, R 299.1075[2]).

3. Searches and Seizures — Reasonableness — Fruits of Searches and Seizures — Standard of Review — Appeal.

The fruits of a search and seizure must be suppressed unless the state meets the burden of proving the reasonableness of the search; however, a trial court's determination that evidence in a suppression hearing is inadmissible should only be reversed on appeal where it is clearly erroneous.

4. Searches and Seizures — Warrantless Searches — Automobile Exception.

Judgment of police officers as to probable cause to believe that a violation of a rule has been committed may serve as sufficient authorization for a warrantless search of an automobile where it is stopped on a highway, is movable, the occupants are alerted, and the contents may never be found again if a warrant must be obtained prior to a search.

5. Statutes — Legislative Intent — Construction.

An act should be construed as a whole to avoid the construction of one provision negating another in determining legislative intent.

6. Statutes — Statutory Construction.

Statutes should be construed to prevent absurdity, hardship, injustice, or prejudice to the public interest.

7. WORDS AND PHRASES — COMMERCIAL FISHING LAW — CONSIGNOR/
CONSIGNEE — STATUTES.

The terms consignor and consignee, as used in the commercial
fishing law, should be defined according to their context within
the statute and the overall legislative intent and not according
to the traditional notion of consignment in commercial law
(MCL 308.26a; MSA 13.1517[1]).

8. FISH AND FISHERIES — WHOLESALE FISH DEALERS — TRANSPORTA-
TION OF FISH — STATUTES.

Licensed wholesale fish dealers are prohibited from transporting,
causing to be transported, or receiving for transportation any
fish unless the package is labeled to disclose the names of the
consignor and consignee, and weight of each kind of fish
contained therein (MCL 308.26a; MSA 13.1517[1]).

9. WORDS AND PHRASES — COMMERCIAL FISHING LAW — CONSIGNOR/
CONSIGNEE — STATUTES.

The terms consignor and consignee under the commercial fishing
law should be construed to include a purchase, delivery, or
traditional consignment of fish (MCL 308.26a; MSA 13.1517[1]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman* and *Donald K. Goulais,* Assistants Attorney General, for complainant.

*Green, Renner, Weisse, Rettig, Rademacher & Clark,* for defendant.

Before: MACKENZIE, P.J., and BRONSON and ALLEN, JJ.

MACKENZIE, P.J. On April 9, 1979, a show-cause hearing was held before Alger County Circuit Judge William F. Hood on plaintiff's complaint for condemnation and confiscation of seven boxes containing approximately 300 pounds of lake trout, found unlabeled in defendant's vehicle, contrary to MCL 308.26a; MSA 13.1517(1). From an order entered April 20, 1979, requiring that the trout be condemned and confiscated with the proceeds from their sale paid to the State Treasury and credited

to the Game Protection Fund, defendant brings this appeal as of right.

Defendant initially contends that the trial court erred in refusing to suppress the boxes of trout as the product of an illegal search and seizure under the Fourth Amendment to the United States Constitution applied to the states through the Fourteenth Amendment.

Since defendant moved to suppress the evidence in the trial court, this issue is properly preserved for review. The people have the burden of proving the reasonableness of any search and seizure. *People v White,* 392 Mich 404; 221 NW2d 357 (1974), *People v Siegel,* 95 Mich App 594, 601; 291 NW2d 134 (1980). Unless this burden is met, the fruits of an unlawful search must be suppressed. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961). However, the trial court's determination that evidence in a suppression hearing is inadmissible will only be reversed where it is clearly erroneous. *Siegel, supra, People v White,* 84 Mich App 351, 354; 269 NW2d 598 (1978), *People v Ulrich,* 83 Mich App 19; 268 NW2d 269 (1978).

The testimony at the show-cause hearing reveals the following facts preceding the search of defendant's truck and seizure of the boxes of trout. Trooper Jack Hodges of the Michigan State Police testified that, upon resuming patrol after eating lunch at home on January 3, 1979, at approximately 12:30 p.m., he noticed a truck, into which fish were being loaded, blocking the alley down the street from his home. Trooper Hodges stated that he pulled up to the back of the truck to advise the driver to pull into the parking lot of Brey's Fishery so that the alley would be clear for traffic. As he reached the truck, the officer observed through his window a box of fish in the back of the truck

labeled "Bay De Noc Fisheries from Patricia A. Brey, 50 pounds of lake trout". Just then, the driver of the truck, subsequently identified as James Hermes, defendant's son, pulled up on a snowmobile with two or three additional boxes of fish.

Trooper Hodges stated that he asked James Hermes whether the trout in the truck had to be tagged. When asked if he could see the trout at that time, the officer answered:

"No, I couldn't. He replied to me he didn't know if they did or not, so I asked him if I could look at the fish in the box he had in his hands, and he said 'sure' and he opened the box, pulled out a lake trout, and it didn't have a tag in the jaw as it's supposed to have."

Trooper Hodges then told Hermes to stop loading the fish until he checked with the Department of Natural Resources (DNR) "about what my authority might be under their rules and regulations, whether I should confiscate the fish or just make known that there was fish there". On cross-examination, he stated that he knew there had been a rule or law requiring trout to be tagged, but he was not sure whether it was still in effect. Trooper Hodges stated he observed and was told that there were six boxes of trout labeled from Patricia A. Brey.

Trooper Hodges radioed his post to check with the DNR regarding the applicable regulation and procedure. After ten minutes elapsed and the information was not forthcoming, he decided to return to his post. Shortly after he arrived at his post, John Wormwood of the DNR telephoned, informing Trooper Hodges that trout were required to be tagged under 1977 AACS, R 299.1075(2) and that the state police, as well as

the DNR, had the authority to confiscate untagged trout.

The officer testified that he returned to the scene and found that defendant's truck had been moved to Matson's Fishery. Hodges stated that the back doors of the truck were open and he inquired of Hermes where the boxes of trout from Brey's Fishery were. Hermes told him that he had not loaded any trout from Brey's. Hermes refused to give Hodges permission to search the truck but said he would not physically prevent him from doing so.

Hodges testified that his search did not locate the untagged trout from Brey's but that he did find seven unlabeled boxes of lake trout. At approximately this time, between 1:30 and 2 p.m., Hodges testified that DNR officers Wormwood and George Eckelbecker arrived. After Hodges told them about finding the boxes of unmarked lake trout, they conducted a search of defendant's vehicle and confirmed that seven of the boxes of trout were not labeled with the names of the consignor or consignee as required pursuant to the statute. The trout were then confiscated.

Defendant attempted to rebut Trooper Hodges' testimony with the testimony of James Hermes and Patricia Brey that the Breys had not sold defendant any lake trout but that Trooper Hodges mistook whitefish for lake trout. Hermes also testified that the unmarked trout were from Schuetter and Jensen, two Indian fishermen and that, under the rule, fish received from Indians are not required to be tagged.

The proposed justification for the warrantless search and seizure herein is the so-called "automobile exception" to the warrant requirement under *Carroll v United States,* 267 US 132; 45 S Ct 280;

69 L Ed 543 (1925). In *Chambers v Maroney,* 399 US 42, 51; 90 S Ct 1975; 26 L Ed 2d 419 (1970), the Supreme Court explained when a warrantless search of an automobile under *Carroll* is constitutional:

"Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence, an immediate search is constitutionally permissible."

In the case at bar, we are satisfied that, at the time Trooper Hodges searched defendant's truck and seized the trout, he had probable cause to believe that violation of Rule 299.1075, promulgated under MCL 308.1b; MSA 13.1491(2), and MCL 308.201; MSA 13.1568(1), had been committed and that the untagged trout could be found in defendant's truck. Despite the conflicting testimony of James Hermes and Patricia Brey, the trial judge was entitled to believe the testimony of Trooper Hodges that he had observed six boxes of trout from Brey's Fishery which were untagged. The fact that the boxes of trout from Brey's were never found is of no avail. Assuming Trooper Hodges had a right to search the vehicle, the trout found to be in violation of the labeling requirement were admissible under the "plain view" exception to the warrant requirement. *People v Murphy,* 87 Mich App 461; 274 NW2d 819 (1978).

The more difficult question is whether, following Trooper Hodges' trip to the State Police post, exigent circumstances still necessitated that he return to the scene to search the vehicle without

first procuring a search warrant. See *Dep't of Natural Resources v Seaman,* 396 Mich 299, 315; 240 NW2d 206 (1976), construing MCL 300.12; MSA 13.1222. In deciding this issue, reference to the Supreme Court's opinion in *Coolidge v New Hampshire,* 403 US 443, 460; 91 S Ct 2022; 29 L Ed 2d 564 (1971), is helpful. In *Coolidge,* the Supreme Court held the automobile exception to the warrant requirement inapplicable because of the lack of exigent circumstances:

"In this case, the police had known for some time of the probable role of the Pontiac car in the crime. Coolidge was aware that he was a suspect in the Mason murder, but he had been extremely cooperative throughout the investigation, and there was no indication that he meant to flee. He had already had ample opportunity to destroy any evidence he thought incriminating. There is no suggestion that, on the night in question, the car was being used for any illegal purpose, and it was regularly parked in the driveway of his house. The opportunity for search was thus hardly 'fleeting'. The objects that the police are assumed to have had probable cause to search for in the car were neither stolen nor contraband nor dangerous."

The Court also stressed that, once the police arrived on the property, Coolidge was immediately arrested and his wife, the only other occupant of the house, was transported by the police to the home of a relative in another town, such that neither could tamper with evidence in the car. Additionally, the police in *Coolidge* had obtained a warrant which was held defective because it was not issued by a neutral magistrate; thus, the argument that exigent circumstances existed, requiring an immediate search without taking time to procure a warrant, was not very convincing.

Although the case at bar bears some similarities

to the facts in *Coolidge,* we believe the distinctions support our conclusion that exigent circumstances still justified the immediate return to the scene and the warrantless search. James Hermes was put on notice that Officer Hodges was returning to the post to check with the DNR regarding the regulation on tagging lake trout. Trooper Hodges was not gone a sufficient time so that it was clear that Hermes had ample opportunity to destroy the evidence. The truck was not parked on private property but was on the public highway, subject to being moved at any time by Hermes. For similar reasons, we find the case at bar factually distinguishable from *Seaman, supra.* Thus, under *Carroll* and *Chambers, supra,* we find the search consistent with Fourth Amendment standards.

Defendant also contends that he was improperly charged under § 26a of the Commercial Fishing Law of 1929, MCL 308.26a; MSA 13.1517(1), for the reason that he purchases fish outright for resale and therefore, is, not a "consignee" as that term is defined according to commercial law. Section 26a provides as follows:

"Every person, firm, company, copartnership, partnership, association or corporation who deals in fish by operating a wholesale fish market or fish house, or who solicits the purchase of or who buys fish for wholesale distribution, shall secure a license from the director of conservation. Every such license shall expire on the thirty-first [31st] day of December and the fee for such license shall be five [5] dollars.

"No person, firm, company, copartnership, partnership, association or corporation holding a license under the provisions of this section shall transport or cause to be transported, or deliver or receive for transportation, any package or parcel containing any fish or carcass or part thereof unless the same is labeled in plain English on the address side of such package or parcel so as to

disclose the name and address of the consignor, the name and address of the consignee, and the number of pounds of each kind of fish contained in such package or parcel.

"Any person, firm, company, copartnership, partnership, association or corporation licensed under the provisions of this section may at any time, sell, purchase or barter, or have in his possession, or under his control, for the purpose of sale or barter, any commercial fish: Provided, That the provisions of section fourteen [14] of this act shall at all times be observed. Each person, firm, company, copartnership, partnership, association or corporation shall keep a separate record of the purchase of such fish in such form as shall be required by the director of conservation, and such record shall at all times be open to inspection by the director of conservation or his representatives." (Footnote omitted.)

In determining legislative intent, if at all possible, an act must be construed as a whole to avoid the construction of one provision to negate another. *Franges v General Motors Corp,* 404 Mich 590, 611; 274 NW2d 392 (1979), *Joslin v Campbell, Wyant & Cannon Foundry Co,* 359 Mich 420; 102 NW2d 584 (1960). Another rule of statutory construction is that statutes should be construed to prevent absurdity, hardship, injustice, or prejudice to the public interest. *Franges, supra,* 612.

The purpose clause of the commercial fishing law provides as follows:

"AN ACT to protect fish and to preserve the fisheries of this state; to regulate the taking of fish in the waters of lakes Superior, Michigan, Huron, and Erie, and the bays thereof, and the connecting waters between the lakes within the jurisdiction of this state; to prescribe the powers and duties of the director of conservation; to provide for financial remuneration to this state for fish taken for commercial purposes and disposition of money derived therefrom; to provide for establishment of great lakes fishery advisory committee and prescribe its pow-

ers and duties; to regulate the transportation, sale and possession of fish in this state; to provide for the issuing of licenses and permits pertaining thereto and the disposition of the moneys derived therefrom; to provide for the confiscation of property used or possessed in violation of this act; and to provide penalties for the violations of the provisions of this act * * *."

Defendant is a licensed commercial wholesale fish dealer. Defendant did not purchase fish for his own use but for resale in the commercial market. Therefore, defendant's reliance on *People v Bola,* 197 Mich 370; 163 NW 893 (1917), is misplaced. To define "consignor" and "consignee" according to the traditional notion of a consignment in commercial law would defeat the legislative purpose of the above statute. It is clear that the terms "consignor" and "consignee" have various connotations dependent on their context within a statute and the overall legislative intent. See *Frost-Pack Distributing Co v Grand Rapids,* 399 Mich 664; 252 NW2d 747 (1977).

We believe that plaintiff correctly states the legislative purpose of the commercial fishing law as the protection of fish and fisheries of this state, the regulation of the transportation, sale, and possession of fish, and the enforcement of the commercial fishing laws. This interpretation is supported by the purpose clause of the statute, *supra.* Under § 26a, licensed wholesale fish dealers are prohibited from transporting, causing to be transported, or receiving for transportation any fish unless the package is labeled to disclose the name of the consignor and the consignee and the number of pounds of each kind of fish contained therein.

In order to facilitate the enforcement of the commercial fishing law, we hold that the statute

requires the package to be labeled with the name of the person or firm from whom the wholesaler received the fish—the consignor—and the name of the person or firm to whom it is to be transported —the consignee. In keeping with the aim of the statute, the terms should be construed to include a purchase, delivery, or traditional consignment. Therefore, defendant was properly charged under the statute.

Affirmed. Costs to plaintiff.