STATE of Minnesota, Respondent,

v.

Aaron David KATES, Appellant.

No. C3–98–1467.

Court of Appeals of Minnesota.

Aug. 29, 2000.

Review Denied Oct. 26, 2000.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul; and Ross Arneson, Blue Earth County Attorney, Mankato (for respondent).

Ann McCaughan, Assistant State Public Defender, Minneapolis (for appellant).

Considered and decided by DAVIES, Presiding Judge, RANDALL, Judge, and ANDERSON, Judge.

## OPINION

RANDALL, Judge

Appellant challenged his conviction on three counts of criminal sexual conduct, asserting the district court erred in denying his motion to sever the charges because they related to different victims. This court agreed, determined that the error was not harmless, and remanded to the district court. The supreme court granted respondent state's petition for review. The supreme court held that this court erred by applying a harmless-error analysis rather than the Spreigl analysis as set forth in *State v. Profit*, 591 N.W.2d 451 (Minn.1999). The supreme court remanded to this court for reconsideration in light of *Profit*. We again reverse and remand to the district court for separate trials relating to each victim on the remaining charges.

## FACTS

Appellant Aaron David Kates held a party at his apartment in January 1997. J.S., who was then 15 years old, attended with her 16–year–old friend T.L. They had smoked marijuana before going to the party and both were drinking alcohol at the party. According to J.S.'s testimony, Kates began talking with her during the party, took her into a bedroom, shut the door, and turned off the light. They kissed, but J.S. told Kates she did not want to have sex with him. Kates unfastened his pants and pushed J.S.'s head down towards his penis. When J.S. tried to leave, Kates pushed her down to the floor and began to kiss her breasts. J.S. left the room when someone came to the bedroom door. J.S. later joined T.L. in the bathroom, and Kates followed her. T.L. testified that while they were all in the bathroom, Kates tried to push her head towards his exposed penis, and she left the bathroom. J.S. testified that after T.L. left, J.S. again told Kates she did not want to have sex, but she eventually gave in, and Kates had intercourse with her.

C.L. testified that on May 30, 1997, when she was 13 years old, she and her 15–year–old friend T.H. stayed overnight at Kates's apartment. The girls had been drinking alcohol and smoking marijuana before going to his apartment and continued drinking after they arrived at his apartment. C.L. passed out on the couch, and T.H. slept in the bedroom with Kates. During the night, Kates came out of his bedroom and asked C.L. for a condom, and C.L. gave him one. Kates then rubbed his penis on her face. C.L. turned away, and Kates left. In the morning, Kates woke C.L. and had intercourse with her.

T.H. testified that although she slept in the same bedroom with Kates on May 30, 1997, she did not have intercourse with him that night. According to T.H., Kates left the bedroom twice that night, and C.L. later told her about the assault. T.H. testified that she and Kates had consensual intercourse once or twice in April 1997.

Kates admitted throwing the January party but denied going into the bedroom with J.S. and denied being in the bathroom with J.S. or T.L. He also testified that he allowed T.H. and C.L. to use his phone on May 30, 1997, but did not allow them to stay overnight with him.

Kates was charged with (a) two counts of third-degree criminal sexual conduct and two counts of fourth-degree criminal sexual conduct against J.S.; (b) one count of indecent exposure towards T.L.; (c) one count of third-degree criminal sexual conduct against C.L.; and (d) one count of third-degree criminal sexual conduct against T.H. Kates moved to sever the charges for the incidents involving C.L. and T.H. from the January 1997 incidents involving J.S. and T.L. The district court denied his motion. After a jury trial, Kates was convicted of one count each of third- and fourth-degree criminal sexual conduct involving J.S. and convicted of one count of third-degree criminal sexual con-

duct against T.H. The jury found Kates not guilty of the other charged offenses.

On appeal, the state did not dispute that joinder of the charges relating to C.L. and T.H. with the charges relating to J.S. and T.L. was error.[1] This court concluded that the district court erred by refusing to sever the charges and determined that this error was not harmless. *State v. Kates,* 598 N.W.2d 693 (Minn.App.1999). The supreme court granted the state's petition for review. The supreme court accepted as true the state's concession that the joinder was improper. *State v. Kates,* 610 N.W.2d 629, 631 (Minn.2000). But the supreme court then went on to state that, as articulated in *State v. Profit,* 591 N.W.2d 451 (Minn.1999), the Spreigl analysis is the correct framework for evaluating "whether an erroneous failure to sever is so prejudicial that reversal is necessary." *Kates,* 610 N.W.2d at 631 (citation omitted). The supreme court set aside this court's harmless error analysis. *Id.* The supreme court remanded to this court for reconsideration in light of *Profit. Id.*

## ISSUE

Applying a Spreigl analysis, was the district court's error in refusing to sever so prejudicial that reversal for new trials is necessary?

## ANALYSIS

■ Joined offenses must be part of a single behavioral incident or course of conduct. *State v. Profit,* 591 N.W.2d 451, 458 (Minn.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 153, 145 L.Ed.2d 130 (1999). The state concedes that the district court erred when it denied Kates's motion to sever the joined offenses. Thus, the only issue is whether this error mandates reversal of Kates's convictions. *See State v. Kates,* 610 N.W.2d 629, 631 (Minn.2000) (recognizing state concedes error and re-

---

**1.** "On motion of the prosecuting attorney or the defendant, the court shall *sever offenses* or charges if * * * the offenses or charges are

not related * * * ." Minn. R.Crim. P. 17.03, subd. 3(1)(a) (emphasis added).

manding to this court to resolve whether district court's error necessitates reversal).

■ The supreme court has directed us that the Spreigl analysis is the "proper framework" for evaluating whether an error in failing to sever is so prejudicial that a reversal is mandated. *Id.* (citing *Profit*, 591 N.W.2d at 460–61). If evidence relating to each charged offense would have been admissible as Spreigl evidence in separate trials, joinder of the charges was not prejudicially erroneous. *See State v. Conaway*, 319 N.W.2d 35, 42 (Minn.1982) (holding although joinder possibly improper, it was not prejudicial because evidence of each offense would have been admissible as Spreigl evidence in trial of other).

■ Whether Spreigl evidence is admissible "is governed by Minn. R. Evid. 404(b) and subject to Minn. R. Evid. 403." *Profit*, 591 N.W.2d at 461 (citation omitted). Evidence of other bad acts may not be used as character evidence to show a defendant conformed with this character. Minn. R. Evid. 404(b). The evidence is carefully limited to demonstrating "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* It is improper for the state to claim "motive, opportunity, intent, * * * or absence of mistake or accident" as a subterfuge to prove a defendant's propensity or disposition to commit a crime. *See State v. Nunn*, 561 N.W.2d 902, 907 (Minn.1997) (stating evidence of other crimes inadmissible to prove defendant's propensity or disposition to commit crimes).

■ Even if offered for a proper purpose under Minn. R. Evid. 404(b), evidence should be excluded pursuant to Minn. R. Evid. 403 if the danger of unfair prejudice, confusion of the issues, or misleading the jury outweighs the probative value of the evidence. *Profit*, 591 N.W.2d at 461. Spreigl evidence may only be admitted if (1) there is clear and convincing evidence that defendant participated in the Spreigl offense; (2) the evidence is rele-

vant and material to the state's case, and (3) the probative value of the evidence is not outweighed by its potential for unfair prejudice.

*State v. Robinson*, 604 N.W.2d 355, 363 (Minn.2000) (citation omitted).

In *Profit*, the defendant was convicted of all charges after a trial on improperly joined offenses. *Profit*, 591 N.W.2d at 458, 460. Thus, the supreme court did not need to address whether there was clear and convincing evidence of all the offenses. In contrast, Kates *was acquitted* on three of the five charges related to his alleged actions in January, and he *was acquitted* of the alleged May offense. This fact, of record, makes it impossible to apply the first prong of the Spreigl admissibility test.

Kates agrees there may have been clear and convincing evidence that he committed the April offense involving T.H. But because Kates *was acquitted* on the May charge after the joined trial, it is impossible to now determine, on appellate review with hindsight, whether there was clear and convincing evidence that Kates committed the May offense. Making a clear and convincing evidence determination, even with its lesser standard than proof beyond a reasonable doubt, after an acquittal by a jury, would require an appellate court to weigh evidence and literally retry the case. That is a role appellate courts try to avoid. *Cf. Robinson*, 604 N.W.2d at 363 (stating in determining admissibility of Spreigl evidence "*trial court* must determine that * * * there is clear and convincing evidence that defendant participated in the Spreigl offense" (emphasis added)); *Kucera v. Kucera*, 275 Minn. 252, 254, 146 N.W.2d 181, 183 (1966) (observing "it is not within the province of [appellate courts] to determine issues of fact on appeal"). Importantly, if Kates had been tried and acquitted on the May offense before a trial on the January offenses, the May offense could not have been admitted at the trial on the January offenses. *See State v. Wakefield*, 278

N.W.2d 307, 309 (Minn.1979) (stating *"under no circumstances"* may evidence of crime for which defendant has been acquitted be admitted at trial on another offense (emphasis added)).

Kates agrees there was clear and convincing evidence of the two January charges on which he was convicted in the joined trial. But as to the three January charges on which Kates was acquitted, indecent exposure towards T.L. and one count each of third- and fourth-degree criminal sexual conduct involving J.S., the only way to determine the existence of clear and convincing evidence would be for this court to retry this evidence from a cold record and find "clear and convincing evidence" despite a jury verdict of not guilty. Making this factual determination exceeds the role and ability of appellate courts. Additionally, had a trial on the April and May charges[2] been held after the trial on the January charges, assuming Kates had again been acquitted of three of the five January charges, evidence relating to the charges from the January incident for which Kates was acquitted would have been inadmissible in a trial on the April and May charges. *See id.*

Due process and fundamental fairness, not to mention common sense, dictate we cannot now, with hindsight, conclude there is clear and convincing evidence that Kates committed the four offenses on which he was acquitted. Absent clear and convincing evidence that Kates committed all the offenses tried in the erroneously joined trial, the first prong in the Spreigl analysis has not been met in this case. Because all three prongs must be fulfilled before Spreigl evidence is admissible, we need not address the second and third prongs. *See Robinson*, 604 N.W.2d at 363 (listing three requirements for admitting Spreigl evidence and joining those requirements with "and"). Kates's improperly joined trial included evidence that would not have been admissible as Spreigl evidence in separate trials. The district court's refusal to separate these offenses was prejudicial error. *See* Minn. R.Crim. P. 17.03, subd. 3(1)(2) (requiring severance of offenses or charges if they are not related). With the jury verdict now in, containing acquittals on more counts than there were convictions, the state cannot satisfy the first prong of the Spreigl test.

## DECISION

The district court's refusal to grant Kates's motion to sever was prejudicially erroneous because evidence of all the joined, charged offenses could not have been introduced as Spreigl evidence in separate trials. We reverse and remand for two separate fair trials, replete with due process, for Kates. The judicial system should be able to accomplish this. Kates is entitled to a new trial on the alleged January incident charges on which he was previously convicted and a new trial on the charge stemming from the alleged April incident.

Reversed and remanded.

---

**2.** Kates asserts that the district court should have severed the charges into three trials, one for the January offenses, one for the April offense, and one for the May offenses. Despite this assertion, in his motion to sever Kates requested only that the court sever the April and May charges from the January charges and "[t]hat the trial regarding [the April and May charges] be heard on January 7 and 8, 1998." Thus, the issue is whether the district court could have properly admitted evidence from the January incidents as Spreigl evidence in a trial on the April and May offenses.