STATE of Minnesota, Appellant,

v.

Rossco A. ROSS, Respondent.

No. A04–1715.

Supreme Court of Minnesota.

June 7, 2007.

Lori Swanson, Attorney General, St. Paul, MN, Michael O. Freeman, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN, for Appellant.

John M. Stuart State Public Defender, Roy G. Spurbeck, Assistant State Public Defender, Office of the State Public Defender, Minneapolis, MN, for Respondent.

## OPINION

PAGE, Justice.

Respondent Rossco A. Ross was found guilty and convicted of one count of identity theft and two counts of theft by swindle after a jury trial in Hennepin County.[1] On appeal, the court of appeals reversed Ross's convictions, holding that the offenses were improperly joined and that, as a result of the improper joinder, Ross was entitled to a new trial. In this appeal, conceding that the offenses were improperly joined for trial, the state asks that we abandon our traditional joinder analysis under Minn. R.Crim. P. 17.03, subd. 3(1)(a), in favor of "a less restrictive interpretation of the term 'related' that applies to the joinder of *all* criminal offenses," reverse the court of appeals, and affirm Ross's conviction. Specifically, the state asks that we construe the term "related" to be consistent with the definition found in 2 ABA Standards for Criminal Justice 13–1.2 and 13–2.1 (2d ed.1980). In the alternative, the state, in its brief, asks us to adopt a rule that would permit joinder of multiple-offense property crimes when statutory provisions would permit offense aggregation.[2] Finally, the state asks us to hold that any error in joining the offenses for trial in this case was harmless.[3] For the reasons discussed below, we agree that the offenses were improperly joined for trial, but decline to abandon our traditional joinder analysis under the rule. We also conclude that the erroneous joinder of the offenses was harmless as to the determination of Ross's guilt and therefore reverse the court of appeals. However, because Ross could not have been properly charged and tried on all four offenses due to the interplay between our joinder rule and Minn.Stat. § 609.035 (2006), we direct that one of Ross's theft-by-swindle convictions be vacated.

Ross's convictions arose out of an identity-theft scheme involving the stolen identities of over 30 people. From March 2002 to July 2002, the stolen identities were used to swindle telephones and services

---

1. The jury found Ross not guilty of one count of theft by swindle.

2. At oral argument, the state did not urge us to adopt this alternative approach to interpreting our joinder rule and instead appeared to abandon the argument. Because a legislative decision to permit aggregation is not a decision to permit joinder, we decline to adopt this alternative approach to interpreting Minn. R.Crim. P. 17.03, subd. 3.

3. In his brief, Ross raises an issue of prosecutorial misconduct, which, because his convictions were reversed on other grounds, was not addressed by the court of appeals. Similarly, in a separate appeal consolidated with Ross's appeal, the state challenges the district court's refusal to impanel a sentencing jury, but the court of appeals did not reach the issue because it reversed on other grounds. Because we reverse the court of appeals and reinstate Ross's convictions, we remand these issues to the court of appeals for further consideration.

from Qwest Communications (Qwest), gift and credit cards from Sears outlets, and gift and credit cards from Target and Marshall Field's outlets (collectively, Target). Ross was involved as an accomplice to the scheme and was prosecuted on one aggregated count of identity theft in violation of Minn.Stat. § 609.527, subds. 2 and 3(4) (2002), and Minn.Stat. § 609.05, subds. 1 and 2 (2006), and three counts of theft by swindle—one each for Qwest, Sears, and Target—in violation of Minn.Stat. § 609.52, subds. 2(4) and 3(2) (2006), and Minn.Stat. § 609.05, subds. 1 and 2 (2006).

In a pretrial motion, Ross moved to sever the offenses for trial. In denying the severance motion, the district court made no finding that the offenses were part of a single behavioral incident but did make a finding that they were "interrelated." At the conclusion of the trial, the jury found Ross not guilty of the theft-by-swindle offense against Sears but found him guilty of each of the other prosecuted offenses. Ross was sentenced to the presumptive guidelines sentences of 23 months executed for the identity theft, 26 months executed for the theft by swindle against Qwest, and 26 months executed for the theft by swindle against Target, to be served concurrently.

On direct appeal to the court of appeals, Ross argued that the district court erred when it refused to sever the offenses because the offenses were not part of a single behavioral incident. He further argued that the improperly joined offenses prejudiced his right to a fair trial. In an unpublished opinion, the court of appeals held that the three theft-by-swindle offenses were not part of a single behavioral incident and were therefore improperly joined in one prosecution. *State v. Ross*, Nos. A04–1715, A05–450, 2005 WL 3466624, at *1 (Minn.App. Dec.20, 2005). Relying on *State v. Kates*, 616 N.W.2d 296,

300 (Minn.App.2000), *rev. denied* (Minn. Oct. 26, 2000), the court of appeals reasoned that, because Ross was acquitted of the theft-by-swindle charge involving Sears, evidence related to that charge was not admissible as *Spreigl* evidence at the trials of the other offenses, and, as a result, the admission of evidence from the improperly joined offenses was per se prejudicial. *Ross*, 2005 WL 3466624, at *3–4. Although the court of appeals indicated that the state's argument for a more permissive joinder rule for cases involving multi-count white-collar crimes was persuasive, the court of appeals declined to depart from our court's case law, reversed Ross's convictions, and remanded for separate trials. *Id.* at *4.

In this appeal, the parties agree that the theft-by-swindle offenses are not related to each other under our traditional joinder rules and therefore were improperly joined. Because the parties concede that joinder of the offenses was erroneous, the primary issue before us is whether we should, as the state requests, adopt a new joinder rule.

I.

The state's request for a more permissive joinder rule requires us to consider the interplay between Rule 17.03 of our Rules of Criminal Procedure and Minn. Stat. § 609.035. Minnesota Rule of Criminal Procedure 17.03, subdivision 1, governs joinder of offenses generally, stating "[w]hen the defendant's conduct constitutes more than one offense, each such offense may be charged in the same indictment or complaint in a separate count." The comment to the rule states that Rule 17.03, subdivision 1, "adopts the provisions of Minn.Stat. § 609.035 (1971) leaving its judicial interpretations to judicial decision." Minn. R.Crim. P. 17.03 cmt.

Minnesota Rule of Criminal Procedure 17.03, subdivision 3(1), governs severance of joined criminal offenses. Rule 17.03, subdivision 3(1), states:

> On motion of the prosecuting attorney or the defendant, the court shall sever offenses or charges if:
>
> > (a) the offenses or charges are not related;
> >
> > (b) before trial, the court determines severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense or charge; or
> >
> > (c) during trial, with the defendant's consent or upon a finding of manifest necessity, the court determines severance is necessary to achieve a fair determination of the defendant's guilt or innocence of each crime.

Thus, Rule 17.03, subdivision 3(1)(a), requires severance of offenses that are "not related," and Rule 17.03, subdivision 3(1)(b) and (c), require severance of related offenses under some circumstances.

Minnesota Statutes § 609.035 is intended to prevent serial prosecutions and double punishments that might create double jeopardy problems. *See* Minn.Stat. Ann. § 609.035, cmts. (West 2003). The statute mandates that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." Minn.Stat. § 609.035, subd. 1.

■■■ We have interpreted the phrase "conduct constitutes more than one offense" from both Rule 17.03, subdivision 1, and Minn.Stat. § 609.035, subd. 1, to mean the same thing as the term "related" in Rule 17.03, subdivision 3(1)(a). *See State v. Profit,* 591 N.W.2d 451, 458–59 (Minn. 1999). Accordingly, when determining the

applicability of these three provisions, we apply the same analysis in all three contexts. *See id.* This analysis requires a court to determine whether two or more offenses are "part of a single behavioral incident." *Id.* at 460. When ascertaining whether multiple offenses are part of a single behavioral incident, we employ a three-faceted inquiry, looking to the "time and place [of the offenses] and * * * whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective." *Id.* at 458 (omission and alteration in original) (internal quotation marks omitted). Existence of only a "common plan" linking multiple offenses has been held to be insufficient to establish the offenses as related. *Id.* at 460.

Application of these interrelated rules creates clear and common-sense consequences in most situations. If the offenses are not related, then pursuant to Rule 17.03, subdivision 3(1)(a), they may not be joined and must be severed if improperly joined. If the offenses are related, then Rule 17.03, subdivision 1, permits them to be joined, and Minn.Stat. § 609.035, subd. 1, bars subsequent prosecution of any unjoined but related offenses, effectively requiring joinder of related offenses if all such offenses are to be prosecuted. *See Profit,* 591 N.W.2d at 458–59. In addition, if joined offenses are related, the court may still sever them under Rule 17.03, subdivision 3(1)(b) and (c), provided the requirements of those subdivisions are satisfied. *Profit,* 591 N.W.2d at 459.

In support of its request that we adopt a new joinder rule, the state contends that, in certain situations, the interrelated provisions of Rule 17.03 and Minn.Stat. § 609.035 conflict, creating a loophole that prevents the prosecution of all offenses committed by an individual. For example, the present case involves one "base

charge" of identity theft related individually to each of the three theft-by-swindle charges, none of which are related to each other. In situations like this, the state asserts that under our joinder rule prosecution may be limited to the base identity theft offense and only one of the related theft-by-swindle offenses because Rule 17.03, subdivision 3(1)(a), might prevent joinder of the three unrelated theft-by-swindle offenses while at the same time Minn.Stat. § 609.035, subd. 1, might require each of those offenses to be prosecuted along with the "base charge" to which they are all independently related if they are to be prosecuted at all.

The state argues that the loophole would be closed if we adopted the joinder provisions set out in the ABA Standards for Criminal Justice. The ABA Standards state:

> Whenever two or more unrelated offenses have been joined for trial, the prosecuting attorney or the defendant shall have a right to a severance of the offenses.

2 ABA Standards for Criminal Justice 13–3.1(a) (2d ed.1980). The Standards define the term "related" to mean "based upon the same conduct, upon a single criminal episode, or upon a common plan." ABA Standards for Criminal Justice 13–1.2. The commentary to that standard expands upon this definition, stating:

> [Common plan] offenses involve neither common conduct nor interrelated proof. Instead, the relationship among offenses (which can be physically and temporally remote) is dependent upon the existence of a plan that ties the offenses together and demonstrates that the object of each offense was to contribute to the achievement of a goal not attainable by the

commission of any of the individual offenses. A typical example of common plan offenses is a series of separate offenses that are committed pursuant to a conspiracy among two or more defendants. Common plan offenses may also be committed by a defendant acting alone who commits two or more offenses in order to achieve a unified goal.

ABA Standards cmt. 13–1.2 (footnotes omitted). The state argues that the "common plan" language renders the ABA interpretation of the term "related" more expansive than our interpretation of the term as used in Rule 17.03, subdivision 3(1)(a). The state claims this broader definition of "related" would avoid the complications that arise when, as in this case, one "base charge" is related to several other charges that are unrelated to each other. The state argues that under this broader definition all of the charges against Ross could be properly joined in one prosecution.

As additional support for the ABA approach, the state asserts that the comment to Rule 17.03, subdivision 3, indicates that it was intended to track the ABA standards.[4] The state claims that the "may" language in Rule 17.03, subdivision 1, indicates joinder was intended to be permissive, but that Minn.Stat. § 609.035, subd. 1, makes joinder mandatory whenever joinder is possible. Finally, the state argues that a more expansive joinder rule would benefit both the state and defendants because it would allow crimes to be prosecuted with greater efficiency, reduce the costs in time and money to the defendant, and potentially increase the likelihood that a defendant would receive concurrent sentences.

---

4. The comment to Rule 17.03, subdivision 3, states, "Part (1) of Rule 17.03, subd. 3, concerning severance of offenses is taken from Unif.R.Crim.P. 472(a) (1987) which is based on ABA Standards for Criminal Justice 13–3.1(a) and (b) (1985)."

■ We view the state's request that we adopt the joinder provisions from the ABA Standards for Criminal Justice as a request that we revisit our recent decision in *Profit,* wherein we declined to adopt the ABA standards on joinder. In *Profit,* after a thorough discussion of Rule 17.03 and the ABA standards on joinder and severance, we rejected the same basic argument that the state makes here, stating:

> We acknowledge that under some circumstances, considerations of efficiency and public policy may support a shift to less restrictive joinder standards, more in keeping with the standards espoused by the Federal Rules of Criminal Procedure and ABA Standards. But in light of our continued reliance on the traditional joinder analysis * * *, and absent a clearer amendment to the direction of Minn. R.Crim. P. 17.03, we decline to abandon our traditional joinder standards here. Under that traditional analysis, we require that joined offenses be part of a single behavioral incident and, therefore, the existence of a common plan, alone, is simply insufficient to support joinder.

*Profit,* 591 N.W.2d at 460. Since *Profit* was decided, we have continued to rely on our traditional joinder analysis. *See, e.g., State v. Kendell,* 723 N.W.2d 597, 607–08 (Minn.2006). Further, there has been no "clearer amendment to the direction of Minn. R.Crim. P. 17.03." Therefore, we see no reason to revisit our holding in *Profit.* Additionally, "[t]he doctrine of stare decisis directs that we adhere to former decisions in order that there might be stability in the law." *Oanes v. Allstate Ins. Co.,* 617 N.W.2d 401, 406 (Minn.2000). While stare decisis does not require us to continue to give validity to unsound princi-

ples, the state has not articulated a compelling reason for us to sacrifice stability and abandon our current interpretation of Minn. R.Crim. P. 17.03, *see id.,* and we decline to do so.[5] Therefore, we hold that the trial court erred when it joined the identity-theft offense with the three theft-by-swindle offenses because the theft-by-swindle offenses, while related to the identity-theft offense, were unrelated to each other.

## II.

Because it was error to join the four offenses for trial and because we decline to adopt a new joinder analysis, we must determine whether the error was prejudicial. *See State v. Conaway,* 319 N.W.2d 35, 42 (Minn.1982). In the past, we have held that improper joinder of two offenses was not prejudicial when evidence of either offense could have been properly admitted as *Spreigl* evidence in the trial of the other offense. *Conaway,* 319 N.W.2d at 42.

The court of appeals held that the erroneous joinder in this case was prejudicial because evidence of the charged offenses could not have been admitted as *Spreigl* evidence if separate trials had been held on each charge. *Ross,* 2005 WL 3466624, at *3–4. More specifically, the court of appeals held that, because Ross was acquitted of the theft-by-swindle offense involving Sears, evidence of that offense would not have been admissible as *Spreigl* evidence in separate trials of the other offenses. *Ross,* 2005 WL 3466624, at *4 (citing *Kates,* 616 N.W.2d at 300). Ross similarly claims that our decision in *State v. Wakefield,* 278 N.W.2d 307, 308–09 (Minn.1979) (holding that charges for which a defendant has been acquitted may not be admitted as *Spreigl* evidence),

5. While we decline the state's request that we adopt the ABA standards on joinder, we take this opportunity to refer the issues raised by the state's request to our Advisory Committee on the Rules of Criminal Procedure.

means that evidence of the acquitted Sears charge could not have been admitted as *Spreigl* evidence in separate trials of the other offenses and therefore the improper joinder was prejudicial. We disagree.

In *Wakefield*, reasoning that it is fundamentally unfair for the state to force. a defendant to again defend against alleged conduct after the defendant has successfully done so once, we held that evidence related to a crime for which the defendant has been acquitted may not be used as *Spreigl* evidence. *Wakefield*, 278 N.W.2d at 308–09. But to be inadmissible as *Spreigl* evidence under *Wakefield*, the acquittal must have occurred before the trial at which the evidence is being sought to be introduced. If there has been no acquittal before the state attempts to introduce evidence related to a separate offense at the trial of another offense, *Wakefield* is not a bar to its admission.[6] Nor does the court of appeals' decision in *Kates* bar its admission.

■ In *Kates*, the court of appeals held that improper joinder is per se prejudicial if the defendant is acquitted on the improperly joined offense, reasoning that an appellate court should not review the factual record for clear and convincing evidence in light of the acquittal. 616 N.W.2d at 300. However, a jury's determination that a defendant is not guilty of a particular crime does not preclude a subsequent determination that, at the time of the trial, the defendant's participation in underlying conduct related to the acquitted offense was supported by clear and convincing evidence. As we said in *Wakefield*, "[i]t may even be at times that evidence of another

crime of which the defendant has been acquitted may still meet the * * * standard of being clear and convincing." *See* 278 N.W.2d at 308. Moreover, there is nothing improper about an appellate court reviewing the record after trial to determine whether *Spreigl* evidence is established by evidence sufficient to satisfy the clear and convincing standard. *See, e.g., State v. Ness*, 707 N.W.2d 676, 686 (Minn. 2006) (reviewing evidence and affirming the trial court's finding that *Spreigl* evidence was supported by clear and convincing evidence); *State v. Doughman*, 384 N.W.2d 450, 454–56 (Minn.1986) (reviewing evidence and holding that the trial court's finding that *Spreigl* evidence was supported by clear and convincing evidence was erroneous). Accordingly, *Kates* is overruled.

Here, at the time of trial, Ross had not been tried, much less acquitted of, the charge involving the Sears offense. Thus, had the offenses been tried separately, Ross would not have been put in the position of having to again defend against that charge after having successfully done so once. Therefore, we conclude that neither due process nor fundamental fairness would have prevented evidence of the Sears offense from being used as *Spreigl* evidence at separate trials of the offenses had the trials been properly severed and the evidence otherwise met the requirements for the admission of *Spreigl* evidence.

■ Our review of the record satisfies us that, had the offenses been severed for separate trials, evidence related to each

---

6. The dissent appears to suggest that *Wakefield*'s holding bars admission of *Spreigl* evidence if, at any time, the underlying conduct is charged and tried, resulting in an acquittal. If that were the case, evidence of conduct that has been properly admitted as *Spreigl* evidence at trial would become retroactively inadmissible if a person was later tried and acquitted for the conduct that had given rise to the *Spreigl* evidence. *Wakefield*, based on the idea that a person should not have to continually defend against accusations after he has successfully done so once, does not require such a result.

individual theft-by-swindle offense would have been admissible at separate trials of each of the other offenses. Evidence of other crimes, wrongs, or bad acts, while not admissible to show the defendant's bad character, may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Minn. R. Evid. 404(b); *Profit*, 591 N.W.2d at 461. In order for *Spreigl* evidence to be admissible, the following conditions must be met:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Ness*, 707 N.W.2d at 686; *see* Minn. R. Evid. 404(b). For purposes of analyzing whether prejudice resulted from improper joinder, we focus on the third, fourth, and fifth conditions. *See Profit*, 591 N.W.2d at 460–61.

First, we conclude that the record contains admissible evidence connecting Ross to each of the theft-by-swindle offenses sufficient to meet the clear and convincing standard. That evidence includes surveillance camera footage showing Ross in the company of other individuals involved in the identity theft and theft-by-swindle schemes as those individuals engaged in thefts or attempted thefts by swindle at both Target and Sears stores. There was also evidence from a witness indicating that Ross was involved in the thefts by swindle against Qwest. Given this evidence, it would not have been an abuse of discretion for a trial court to have found Ross's involvement in each theft-by-swin-

dle offense to be supported by clear and convincing evidence.

■ We also conclude that evidence of each theft-by-swindle offense is relevant and material to each of the other theft-by-swindle offenses. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. In his closing argument, Ross attacked the sufficiency of the state's evidence regarding intent and participation and suggested instead that "there's nothing suspicious or sinister" about the circumstantial evidence implicating Ross in the thefts by swindle. But evidence connecting Ross to any one of the theft-by-swindle offenses makes his involvement in each of the other theft-by-swindle offenses more probable by shedding light not only on his intent and participation, but also on his knowledge, opportunity, and preparation, as well as the common plan used in each offense. Therefore, we conclude that evidence of Ross's participation in each theft-by-swindle offense is relevant to a determination of Ross's guilt with respect to each of the other theft-by-swindle offenses.

■ Finally, we conclude that the probative value of the evidence outweighs the potential for unfair prejudice to Ross. Each theft-by-swindle offense, although not "related" to any of the other theft-by-swindle offenses, is inextricably connected to the identity-theft offense that was the foundation for each theft by swindle. As the foundation for each theft by swindle, evidence of the identity-theft offense and therefore each theft by swindle is probative of the entire scheme and how it worked. Moreover, the evidence was nei-

ther inflammatory nor of a type likely to persuade by illegitimate means.[7]

Having concluded that evidence of Ross's participation in each theft-by-swindle offense both met the clear and convincing standard and was relevant, and that the probative value of the evidence was not outweighed by its potential for unfair prejudice, we further conclude that the evidence would have been admissible as *Spreigl* evidence at separate trials of the offenses. Because we conclude that admission of evidence of the improperly joined offenses would have been admissible as *Spreigl* evidence had the offenses been properly severed for trial, we also conclude that the improper joinder of the offenses was not prejudicial to Ross regarding determination of his guilt or innocence. *See Profit*, 591 N.W.2d at 461. Accordingly, we reverse and remand to the court of appeals for determination of any remaining properly raised issues.

However, even though we have concluded that the improper joinder of the theft-by-swindle offenses did not result in prejudice with respect to determination of Ross's guilt, it is clear that the state could not properly charge and prosecute both the separate theft-by-swindle offenses and the identity-theft offense without violating either Minn. R.Crim. P. 17.03 or Minn. Stat. § 609.035. Because, in this case, Ross could only have been properly prosecuted on a single theft-by-swindle offense, we instruct the court of appeals, should it affirm Ross's convictions, to remand to the district court to vacate one theft-by-swindle conviction. Moreover, because this extra conviction may have had an adverse impact on Ross's sentences by elevating his criminal history score, the district

court should take action to correct Ross's remaining sentences, if necessary.

Affirmed in part, reversed in part, and remanded.

GILDEA, J., took no part in the consideration or decision of this case.

MEYER, Justice (dissenting).

I would agree that the three theft-by-swindle charges were not part of a single behavioral incident and were therefore improperly joined in one prosecution. However, I cannot agree that the improper joining of these charges was not prejudicial to Ross. I would conclude that because Ross was acquitted of the theft-by-swindle charge involving Sears, evidence related to that charge was not admissible as *Spreigl* evidence at the trial of the other offenses and, as a result, the admission of evidence from the improperly joined offenses was per se prejudicial.

In the past, this court has employed a *Spreigl* analysis to determine whether improperly joined offenses are prejudicial. *See, e.g., State v. Profit*, 591 N.W.2d 451, 460–61 (Minn.1999); *State v. Conaway*, 319 N.W.2d 35, 42 (Minn.1982). *Spreigl* analysis is appropriate because if evidence of the improperly joined offenses would have been admitted as *Spreigl* evidence in separate trials of each offense, then the defendant could not have been prejudiced by the improperly joined offenses. *See Profit*, 591 N.W.2d at 460–61. Here, however, unlike *Profit*, Ross was acquitted of one of the misjoined offenses (the Sears swindle). Acquitted conduct is not admissible as *Spreigl* evidence. *State v. Wakefield*, 278 N.W.2d 307, 309 (Minn.1979) (stating that "we conclude that under no circumstances

---

7. We also note that Ross was ultimately acquitted of the theft-by-swindle offense involving Sears, indicating that the jury weighed each charge separately and that the admission

of evidence relating to each of the theft-by-swindle offenses did not result in prejudice to Ross.

is evidence of a crime other than that for which a defendant is on trial admissible when the defendant has been acquitted of that other offense.").

On the acquitted offense there has been no determination at the district court level that its evidentiary basis meets the clear and convincing standard. The only determination at the district court level was the jury's determination that the offense was not established beyond a reasonable doubt. So when a defendant is acquitted of any of the misjoined offenses, the task of applying the *Spreigl* analysis on appeal becomes entirely unwieldy. The evidence has not stood the test of the "clear and convincing evidence" standard because the district court never considered whether the Sears charge could withstand the test. It is highly improbable to conclude that evidence related to an acquitted charge could meet the clear and convincing standard. Accordingly, there is no decisive factual finding from the district court level to review on appeal.

While it is theoretically possible for the acquitted offense to meet the clear and convincing standard but not the beyond a reasonable doubt standard, *see Wakefield*, 278 N.W.2d at 308, I believe it is inappropriate for such a factual determination to be made for the first time on appeal in the face of a not guilty verdict—the distinction is too fine to trust to an appellate court. Accordingly, I cannot conclude that evidence of the acquitted theft-by-swindle offense would have been admitted as *Spreigl* evidence in separate trials of the other offenses. Due process and fundamental fairness lead me to conclude that the district court's failure to separate these charges for trial was prejudicial error.

Even if I could conclude that the improper joinder of these offenses may not have prejudiced Ross, it is clear that the prosecution of several smaller separate offenses rather than one larger aggregate offense may give a defendant a higher criminal history score. The parties agree that a higher criminal history score may result in a more severe sentence. Ross may have been prejudiced in the calculation of his sentence due to an illegitimately elevated criminal history score. In an apparent effort to increase Ross's criminal history score and thereby increase his sentence, the prosecutor made the strategic decision to charge the theft-by-swindle offenses individually and join them together in a single prosecution, rather than charge the offenses as one aggregated count as the law permits. The possibility that this strategy might fail should have been clear in light of our clear statements on the joinder rule in *Profit* and the fact that the prosecutor argued that the theft-by-swindle offenses were "part of a single behavioral incident" for purposes of joinder under Minn. R.Crim. P. 17.03, but then argued that they were not "part of a single behavioral incident" for purposes of sentencing under Minn.Stat. § 609.035, subd. 1 (2006). Now that the prosecution's strategy has proven to be unsuccessful, it is not the prerogative of the judiciary to undo the prosecution's decision and retrospectively determine that a misjoined charge on which the defendant was acquitted would have been admissible as *Spreigl* evidence had the case been prosecuted in a different way. For this reason and for the reason of fundamental fairness, the judgment of the court of appeals should be affirmed.