*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0165**

State of Minnesota,
Respondent,

vs.

Eric John Henderson-Bey,
Appellant.

**Filed February 2, 2015
Affirmed
Hudson, Judge**

Dakota County District Court
File No. 19HA-CR-11-1922

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Stacy St. George, Assistant County Attorney, Hastings, Minnesota (for respondent)

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, Inver Grove Heights, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Peterson, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant challenges his convictions of engaging in a pattern of harassing conduct and criminal sexual conduct, arguing that (1) the evidence is legally insufficient to

support the jury verdicts; (2) the district court abused its discretion by denying his motion to sever and by trying the offenses against both victims together; (3) the district court abused its discretion by not excusing a juror for cause; and (4) he is entitled to a new trial because the prosecutor committed misconduct in opening and closing remarks. He also raises several arguments in a pro se supplemental brief. We affirm.

**FACTS**

After the state alleged that appellant Eric John Henderson-Bey had sexual contact with O.W and C.W., the minor children of his girlfriend, L.W., a jury found appellant guilty of one count of first-degree criminal sexual conduct, *see* Minn. Stat. § 609.342, subds. 1(h)(iii), 2 (2008); three counts of second-degree criminal sexual conduct, *see* Minn. Stat. § 609.343, subds. 1(a), 1(g), 1(h)(iii) (2008), and one count of engaging in a pattern of harassing conduct, *see* Minn. Stat. § 609.749, subd. 5(a) (2008).

At trial, C.W., who was then 21, testified that in sixth grade, in 2003, she lived in St. Paul with appellant, L.W., and three younger siblings, including O.W., her youngest sister. She testified that appellant had sexual contact with her on the day before her 12th birthday that year, calling her into a room when her mother was out, playing a pornographic video, and penetrating her vagina with his fingers. Appellant touched her again later that summer, grabbing her and placing his tongue in her mouth, and that during that year, on multiple occasions, he told her to go to the basement, where he had sexual intercourse with her. She testified that she "just wanted to die" when it was occurring, but that she was afraid to tell anyone because appellant told her that if she told her mother, he would do the same thing to her younger sister. She stated that she later

2

told her mother about the abuse and that her mother confronted appellant. Appellant denied the abuse, which stopped for about four months before beginning again. The incidents ended in 2005 when she was 14 because she left the home and moved to Illinois to live with her great aunt.

C.W. further testified that in 2009, after speaking to a police investigator about an incident in which appellant physically abused her younger brother, she told the investigator about the sexual abuse. The next summer, she discovered that O.W. had come across a paper that C.W. had written for a school assignment, which described the abuse. The two talked about it, and O.W. started crying, so C.W. asked whether anything like that had happened to her, and O.W. told C.W. that she didn't want to go into details." C.W. testified that she became concerned when she came across a notebook that O.W. had written in, so C.W. then contacted the police and spoke to a police investigator.

O.W. testified that in 2008, when she was 12 and living in St. Paul, appellant came into her room when she was sleeping, pulled the covers off and her pajama pants down, and touched her breasts and the inside and outside of her vagina with his fingers while also touching his penis. O.W. testified that he told her not to tell anyone because her mother would have a difficult time, and she did not tell L.W. because L.W. had not intervened when she had learned what had happened to C.W. She testified that the abuse happened about six times, until appellant moved out, but when the family moved to West St. Paul, it happened once again on a couch in the same manner. O.W. told her great-aunt on a trip to Chicago in 2008, but nothing came of it. O.W. found C.W.'s notebook in 2010 in C.W.'s old bedroom, and O.W. wrote about five pages in it herself, describing

3

her own abuse.  Those pages were admitted into evidence.  O.W. testified that, in the fall of 2010, she told a police investigator that appellant had touched her, but she did not describe the full extent of the abuse because she feared her mother would get angry with her.

Cross-examination revealed some inconsistencies in O.W.'s testimony.  O.W. agreed that she told her sister that appellant had touched her leg but that she did not say where.  O.W. acknowledged that when she talked to the investigator, she did not then say that appellant inserted his hand in her vagina, placed his mouth on her vagina, or was touching himself.  She admitted that in an interview, she told a social worker that appellant had touched her on the inner thighs, but that there was no penetration, and he did not touch her breasts.  On redirect, O.W. said that in the St. Paul house, appellant touched her on the vagina with his mouth.

J.W., the girls' great-aunt, testified that C.W. told her that appellant had raped her from ages 11 to 14 and that O.W. told her that appellant had sexually touched her as well. She testified that she did not tell their mother about the incidents with O.W. because L.W. had not intervened when informed about the incidents with C.W.

A West St. Paul police investigator testified that C.W. told her that appellant had started touching and kissing her on the day before her 12th birthday, and the behavior eventually escalated until she got her period, when he started having intercourse with her. The investigator testified that O.W. was very reserved and initially did not want to talk, but then she started opening up.  But the investigator acknowledged that O.W. did not tell her that appellant performed oral sex on her or was masturbating while he touched her.

4

Appellant testified and denied that he abused C.W. or O.W. He testified that he was strict and required the children to do chores, which the defense alleged presented a motive for fabricating charges against him.

After the jury found appellant guilty of five of six counts, the district court sentenced appellant to 38 months on the pattern-of-harassing-conduct offense and a concurrent sentence of 280 months on the first-degree criminal sexual conduct offense. This appeal follows.

## DECISION

## I

When considering a claim of insufficient evidence, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction," was sufficient to allow the jurors to reach their verdict. *State v. Caine*, 746 N.W.2d 339, 356 (Minn. 2008) (quotation omitted). This court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably have found the defendant was guilty of the crime charged. *State v. Chavarria-Cruz*, 839 N.W.2d 515, 519 (Minn. 2013).

*Pattern of Harassing Conduct*

Appellant argues that the evidence is insufficient to sustain his conviction of engaging in a pattern of harassing conduct. To convict him of that offense, the state was required to prove beyond a reasonable doubt that he

5

> engage[d] in a pattern of harassing conduct with respect to a single victim or one or more members of a single household which [he] kn[ew] or ha[d] reason to know would cause the victim under the circumstances to feel terrorized or to fear bodily harm and which . . . cause[d] this reaction on the part of the victim.

Minn. Stat. § 609.749, subd. 5(a) (2008).[1] Criminal sexual conduct is included in the list of acts that may constitute a pattern of harassing conduct. *Id*., subd. 5(b).

First, appellant argues that, to the extent that the jury may have found that his actions against O.W. and C.W. constituted a pattern of harassing conduct, the evidence is insufficient to support his conviction because O.W. and C.W. were not "members of a single household" when the acts occurred against each of them. *See id*., subd. 5(a). Although a pattern-of-harassing-conduct conviction requires more than one act, it does not require more than one victim. *See id*. (providing that the pattern of harassing conduct may be committed "with respect to a single victim").

The district court instructed the jury with respect to a pattern of conduct committed against "C.W or O.W.," and that appellant had been charged based on five alleged acts committed against O.W. and three alleged acts committed against C.W. We presume that a jury follows the district court's instructions, *State v. Budreau*, 641 N.W.2d 919, 926 (Minn. 2002), and based on that instruction, the jury could have found appellant guilty based on a pattern of acts committed against O.W. or C.W. Further, we have rejected a unanimous-verdict argument in a child sex-abuse case when, as here, the victim testified as to ongoing abuse, the prosecution did not distinguish proof of certain

---

[1] In 2010, the Minnesota legislature changed the term "harassing conduct" to "stalking conduct." *See* 2010 Minn. laws ch. 299, § 8.

incidents from proof of others, and the defendant did not present separate defenses for each incident. *State v. Rucker*, 752 N.W.2d 538, 548 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008).

Next, appellant argues that the evidence was insufficient to prove that he knew or had reason to know that C.W. or O.W. would feel terrorized or fear bodily harm. Intent involves a state of mind and is generally established by circumstantial evidence. *State v. Davis*, 656 N.W.2d 900, 905 (Minn. App. 2003), *review denied* (Minn. May 20, 2003). Because "[a] conviction based on circumstantial evidence . . . warrants heightened scrutiny," this court applies a two-step analysis to determine whether the evidence was sufficient to support the conviction. *State v. Al–Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (citation omitted). First, we identify the circumstances proved, deferring to the jury's acceptance of these facts and assuming that the jury rejected all contrary facts. *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013). Second, we determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except guilt. *Id.* at 599.

The effect of an assault on a victim may provide circumstantial evidence of intent. *State v. Hough*, 585 N.W.2d 393, 396 (Minn. 1998). Appellant points out that "terrorize" is defined as "to cause extreme fear by use of violence or threats," *State v. Franks*, 765 N.W.2d 68, 74 (Minn. 2009), and he maintains that because O.W. testified that she pretended to be asleep during the incidents, the evidence would sustain an inference that she did not know whether they were taking place. But both C.W. and O.W. testified that they were scared of appellant and that he told them not to tell anyone about the abuse.

7

*See id.* at 77 (noting that statements that the defendant's efforts to contact the victim made her "very scared" and "fearful" established extreme fear). According to C.W., appellant threatened that if she told her mother, he would do the same thing to O.W. The only rational inference consistent with the circumstances proved is that appellant knew or had reason to know that C.W. or O.W. would feel terrorized or fear bodily harm because of his conduct.

*Criminal sexual conduct*

Appellant argues that the evidence is insufficient to convict him of first-degree criminal sexual conduct committed against O.W. because O.W.'s testimony is inconsistent and does not establish penetration. Appellant points out that in two prior interviews before trial, O.W. did not mention that appellant had penetrated her vagina with his fingers or touched her vagina with his mouth. But "a conviction can rest upon the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted). "[T]he jury is in the best position to weigh the credibility of evidence and thus determines which witnesses to believe and how much weight to give to their testimony." *State v. Moore*, 481 N.W.2d 355, 360 (Minn. 1992). The jury was entitled to find O.W.'s testimony under oath describing penetration credible, and they could have reasonably inferred that she would be reluctant to share details of the abuse with investigators, based on her belief that her mother would not want her to report the incidents.

Appellant also argues that O.W.'s testimony may have been unduly affected by exposure to C.W.'s journal, which contained evidence of C.W.'s abuse by appellant,

8

citing *State v. Huss*, 506 N.W. 2d 290, 290–93 (Minn. 1993) (holding that the evidence was insufficient to support a criminal-sexual-conduct conviction when a three-year-old child was exposed to highly suggestive material on sexual abuse, which may have improperly influenced the child's report of events). But the victim in *Huss* was considerably younger than O.W. and was influenced by her mother in the context of a visitation dispute. *See id.* Further, C.W.'s journal did not give details about her abuse by appellant and was therefore unlikely to influence the substance of O.W.'s testimony.

Finally, appellant argues that there was no physical evidence to support the second-degree criminal-sexual conduct convictions. But O.W.'s testimony on touching of her intimate parts is consistent with her statement to the social worker that appellant had touched her inner thigh, and physical evidence is not required to corroborate a sexual-assault victim's testimony. *State v. Folley*, 378 N.W.2d 21, 26 (Minn. App. 1985). Giving deference to the jury's verdict, we conclude that the evidence is sufficient to sustain appellant's convictions of first- and second-degree criminal sexual conduct.

## II

Appellant argues that the district court erred by denying his motion to sever the pattern-of-harassing-conduct count as related to C.W. from the criminal-sexual-conduct counts as related to O.W. The district court ruled that, because appellant's conduct was admissible as relationship evidence to show appellant's relationship to others in his family or household, the offenses would be tried together.

We review the district court's denial of a motion to sever de novo. *State v. Kendell*, 723 N.W.2d 597, 607 (Minn. 2006). On motion by either party, the district

9

court must sever offenses or charges if (1) the charges are not related; (2) severance is necessary or appropriate to promote a fair trial; or (3) during trial, the court determines that severance is necessary to fairly determine the defendant's guilt or innocence of each offense. Minn. R. Crim. P. 17.03, subd. 3(1). A district court considering a motion to sever "must first decide whether the offenses are related and, if they are related, must determine whether joinder would prejudice the defendant." *Kendell*, 723 N.W.2d at 607. Charges or offenses are related when they involve a single behavioral incident. *Id.* at 607. The district court determines whether offenses are part of a single behavioral incident by evaluating the geographic and temporal proximity of the offenses and whether the conduct was motivated by a single behavioral objective. *Id.* at 607–08.

Appellant argues that the pattern-of-harassing-conduct count as to C.W. was improperly joined with the other counts as to O.W. because C.W. and O.W. were no longer members of the same household at the time of O.W.'s alleged abuse. *See* Minn. Stat. § 609.749, subd. 5(a) (2008) (requiring that a pattern of harassing conduct be committed against "one or more members of the same household"). We agree. As appellant points out, the conduct committed against O.W. occurred when C.W. was living in Chicago and was not a member of the same household as O.W. In addition, the time differential of several years between the acts committed against each child precludes a determination that appellant committed those acts as a part of the same behavioral incident. *See Kendell*, 723 N.W.2d at 607. Therefore, the district court erred by denying the motion to sever the offenses for trial.

10

But even if offenses are improperly joined, remand is not required unless the error was prejudicial. *State v. Ross*, 732 N.W.2d 274, 280 (Minn. 1977). "Joinder is not unfairly prejudicial if evidence of each offense would have been admissible at a trial of the other offenses had the offenses been tried separately." *Kendell*, 723 N.W.2d at 608. Generally, if the joined offenses could have been presented as *Spreigl* evidence in separate trials of the offenses, the error is not prejudicial. *Ross*, 732 N.W.2d at 280.

The district court ruled that the incidents committed against C.W. were admissible as relationship evidence. Relationship evidence is similar to *Spreigl* evidence. *State v. Meldrum*, 724 N.W.2d 15, 20 (Minn. App. 2006), *review denied* (Minn. Jan. 24, 2007). Relationship evidence is defined as "[e]vidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members." Minn. Stat. § 634.20 (2008). In this context, a family or household member includes "persons who are presently residing together or who have resided together in the past." Minn. Stat. § 518B.01, subd. 2(b)(4) (2008). We have clarified that "section 634.20 authorizes the admission of evidence of domestic abuse against appellant's family or household members." *State v. Valentine*, 787 N.W.2d 630, 638 (Minn. App. 2010), *review denied*, (Minn. Nov. 16, 2010). Domestic abuse may include criminal sexual conduct. *See* Minn. Stat. § 518B.01, subd. 2(a) (defining domestic abuse). Because C.W. and O.W. resided together in the past in the same household with appellant, appellant's conduct against both women falls within the category of relationship evidence.

Appellant argues that evidence of appellant's actions against C.W. would not have been admissible in a separate trial on his offenses against O.W. because that evidence

11

was irrelevant and highly prejudicial. Evidence is relevant if it makes a material fact more or less probable. Minn. R. Evid. 401. Relationship evidence is not admissible if its "probative value is substantially outweighed by the danger of unfair prejudice." Minn. Stat. § 634.20; *see* Minn. R. Evid. 403 (stating that general standard). "When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn. 2006) (quotation omitted).

C.W.'s testimony alleging similar abuse was relevant and had high probative value in the state's case alleging similar acts committed against O.W. We are troubled, however, by the state's reliance on C.W.'s testimony to assist in proving appellant's abuse of O.W. because C.W.'s testimony was more extensive and specific than O.W.'s testimony. Nonetheless, under the circumstances in this case, we cannot conclude that the evidence of C.W.'s abuse "persuade[d] [the jury] by illegitimate means." *Id.* The Minnesota Supreme Court has noted that domestic-abuse cases present a particular challenge for the prosecution because that offense "typically occurs in the privacy of the home, . . . frequently involves a pattern of activity that may escalate over time, and . . . is often underreported." *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). And in the unique context of those cases, relationship evidence may assist the jury by providing a context in which to judge the credibility of the parties to the relationship. *Id.* Here, appellant alleged that O.W. fabricated allegations of abuse because appellant disciplined her. C.W.'s testimony assisted the jury in assessing appellant's and O.W.'s credibility.

12

Finally, the jury found appellant not guilty of an additional count of second-degree criminal sexual conduct, which tends to show that the jury was not prejudicially influenced by the evidence. *State v. DeWald*, 463 N.W.2d 741, 745 (Minn. 1990) (stating that acquittal of some charges demonstrates that the jury conscientiously considered the evidence rather than resorting to passion or prejudice).

Appellant alleges that the state improperly "bootstrapped" the pattern-of-harassing-conduct charge to allow evidence of C.W.'s abuse in O.W.'s criminal-sexual-conduct trial, even though the statute of limitations for criminal sexual conduct based on the acts relating to C.W. had run. But an examination of the relevant statute of limitations indicates that, when this action was filed, the statute of limitations had not yet run as to the 2003-2005 acts committed against C.W. When an offense is continuing, the statute of limitations begins to run when the offense ends, and we apply the statute in effect when the victim was required to report the abuse. *State v. Soukup*, 746 N.W.2d 918, 921 (Minn. App. 2008), *review denied* (Minn. June 18, 2008). The statute of limitations began to run with respect to the offenses against C.W. in 2005. And the version in effect when C.W. was required to report her abuse provides that, when the victim is under 18, the complaint must be filed "within the later of nine years after the commission of the offense or three years after the offense was reported to law enforcement authorities." Minn. Stat. § 628.26(e) (2012). The 2011 complaint was filed within nine years after the 2005 offense, which C.W. reported in 2009 and 2010. Therefore, the statute of limitations did not yet bar charges for criminal sexual conduct committed against C.W., and we reject appellant's argument based on that premise.

13

Finally, appellant argues that his due-process rights were violated by the denial of the motion to sever. But joinder of charges for trial is a procedural issue that does not implicate a fundamental right. *See Santiago v. State*, 644 N.W.2d 425, 444 (Minn. 2002) (stating that joinder and severance of defendants involve procedural issues, rather than substantive rights). We conclude that the district court did not err by denying the motion to sever on the basis that C.W.'s testimony would have been admissible as statutory relationship evidence in appellant's trial on charges relating to O.W.

### III

Appellant argues that the district court abused its discretion by denying his motion to remove juror nine for cause. We review the district court's denial of a challenge for cause under a deferential abuse-of-discretion standard because the district court's decision depends largely on the prospective juror's demeanor, which the district court is in the best position to observe. *State v. Munt*, 831 N.W.2d 569, 576 (Minn. 2013).

Both the United States and the Minnesota Constitutions guarantee a criminal defendant the right to a fair trial by an impartial jury. U.S. Const. amend. VI; Minn. Const. art. I, § 6. Allowing a biased juror to sit on a criminal jury constitutes reversible error. *State v. Logan*, 535 N.W.2d 320, 325 (Minn. 1995). A prospective juror may be challenged for cause if "[t]he juror's state of mind—in reference to the case or to either party—satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the challenging party." Minn. R. Crim. P. 26.02, subd. 5(1). The challenging party has the burden to show that the juror expressed a state of mind demonstrating actual bias, which means more than a preconceived notion as to

14

the defendant's guilt or innocence, requiring instead that a juror display "strong and deep impressions" that would prevent setting aside the juror's opinions and reaching a verdict based solely on the evidence. *Munt*, 831 N.W.2d at 577 (quotation omitted).

Appellant argues that juror nine displayed actual bias because she indicated in her jury questionnaire that she had been raped when she was 17 years old, became emotional when the charges were read, expressed doubts that she could be fair, and stated that she was feeling stress related to the nature of the charges. But although juror nine indicated it was "possible" that her past experience, which occurred over 30 years before trial, could affect her ability to listen to the evidence, she stated that she thought she could be fair and keep an open mind. And she affirmed to the prosecutor that she could follow the district court's instructions and apply the presumption of innocence.

Appellant argues that "there was an obvious disconnect" between juror nine's words and her actions, which showed that she was unable to be impartial in considering the evidence. But the district court is best able to evaluate a juror's demeanor and determine whether she can be fair, and on this record, appellant has not shown that the district court abused its discretion by denying appellant's motion to remove juror nine for cause.

**IV**

Appellant argues that the prosecutor's remarks during opening and closing argument constituted prejudicial misconduct. This court applies plain-error review to unobjected-to alleged prosecutorial misconduct. *State v. Ramey*, 721 N.W.2d 294, 298–99 (Minn. 2006). Under that standard, a defendant must demonstrate error that was plain

15

and that affected the defendant's substantial rights. *Id*. at 302. We will reverse a conviction due to prosecutorial misconduct "only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003).

Appellant challenges the prosecutor's statement at opening that appellant "sexually abused both of the daughters of his girlfriend, [L.W.]." He also challenges the statements at closing that L.W.'s three previous children "suffered at the hands of the Defendant and [L.W.] stood by and watched it happen and did nothing. . . . I suggest to you that [L.W.] knew that [appellant] sexually abused [C.W.] and [O.W.]. She chose [appellant] over them." Appellant argues that these arguments played on the emotions of the jury and improperly invited the jury to assist C.W. and O.W. by taking on a parental role when their mother refused to do so.

The prosecutor may not invite the jury to consider issues beyond the scope of the case. *State v. Casady*, 392 N.W.2d 629, 634 (Minn. App. 1986), *review denied* (Minn. Sept. 24, 1986). But prosecutors may "state conclusions and inferences which the human mind may reasonably draw from the facts in evidence." *State v. Swaney*, 787 N.W.2d 541, 561 (Minn. 2010) (quotation omitted). We assess opening or closing arguments as a whole when considering claimed instances of misconduct, not individual remarks removed from context. *State v. Johnson*, 616 N.W.2d 720, 728 (Minn. 2000).

Here, L.W.'s relationship with appellant and her treatment of her children is relevant to explain O.W.'s reluctance to report allegations of abuse by appellant, based on L.W.'s failure to act after C.W. had previously reported abuse. The reference in closing

16

argument to L.W.'s parenting helps explain this evidence and assist the jury in evaluating O.W.'s credibility. The prosecutor's statements do not amount to plain error.

## V

Appellant raises the following additional claims in a pro se supplemental brief: (1) that the district court judge committed misconduct by injecting himself into unsuccessful plea negotiations; (2) that the district court's comments on a child in the courtroom violated appellant's right to a public trial; (3) that the district court committed misconduct by reciting the charges against him to the jury; and (4) that the state lacked probable cause for the charges against him, although he did not timely challenge the determination of probable cause. We have thoroughly reviewed these claims and conclude that none presents a basis for relief. *See Ture v. State*, 681 N.W.2d 9, 20 (Minn. 2004) (rejecting pro se arguments without detailing consideration of each argument).

**Affirmed.**