STATE of Minnesota, Respondent,

v.

**Rashad Ramon IVY, Appellant.**

A16-1339

Court of Appeals of Minnesota.

Filed September 25, 2017

Lori Swanson, Attorney General, St. Paul, Minnesota; and John J. Choi, Ramsey County Attorney, Adam E. Petras, Assistant County Attorney, St. Paul, Minnesota (for respondent).

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Rodenberg, Presiding Judge; Kirk, Judge; and Florey, Judge.

## OPINION

FLOREY, Judge

On appeal from his convictions of ten counts that included sex-trafficking, criminal sexual conduct, and solicitation to practice prostitution, appellant argues that (1) the district court erred by denying his motion to sever under Minn. R. Crim. P. 17.03, subd. 3; (2) the district court committed prejudicial plain error by not sua sponte giving an accomplice-liability jury instruction pertaining to Count 10 of the complaint; (3) there was insufficient evidence to sustain his conviction of Count 5 of the complaint; (4) the prosecutor committed prejudicial misconduct during closing argument; and (5) his sentence was unlawfully enhanced. Appellant also filed a pro se supplemental brief raising several issues. We affirm appellant's convictions, but because we conclude that appellant's sentence was unlawfully enhanced, we reverse his sentence and remand for resentencing.

## FACTS

In June 2015, appellant Rashad Ivy was charged with second-degree sex trafficking and domestic assault by strangulation, for

offenses involving A.B., Counts 1 and 2. The complaint was later amended to add the following ten charges: Counts 3-5, second-degree solicitation to practice prostitution involving S.M., J.S., and R.C., respectively; Count 6, third-degree criminal sexual conduct involving J.S.; Count 7, conspiracy to engage in sex trafficking in the second degree; Counts 8-10, second-degree sex trafficking involving K.B., A.H., and T.H., respectively; Count 11, first-degree solicitation to practice prostitution involving W.M-H.; and Count 12, conspiracy to engage in sex trafficking in the first degree. Tarris Trapps and Danika Johnson, who both testified against appellant, were charged with, and pleaded guilty to, offenses associated with appellant's sex-trafficking scheme.

Prior to trial, the district court denied appellant's motion to sever Counts 1 and 2, involving A.B., from the rest of the counts in the complaint under Minn. R. Crim. P. 17.03, subd. 3. The matter then proceeded to trial at which Tonya Price of Homeland Security Investigations testified as "an expert in human trafficking." According to Price, a human trafficker or "pimp" typically has a "bottom bitch" or "main girl" who "takes direction from the trafficker and has more control over other girls." Appellant's "main girl" was Johnson, who moved in with appellant in September 2014. Shortly thereafter, Johnson began giving "sensual" body massages for money, which soon escalated into prostitution. Johnson testified that she would give appellant the money she earned prostituting, and he would buy her "stuff," like cars and clothes. Johnson also testified that, under the direction of appellant, she encouraged other women who had been recruited by appellant to become prostitutes, and helped them create advertisements on Backpage.com.

Appellant met K.B. while she was working as a dancer. Shortly thereafter, when K.B. began having marital problems, appellant convinced K.B. to move in with him and Johnson. Appellant also convinced K.B. to quit her job as a dancer and to begin "[h]aving sex for money" because "it's faster money working on Backpage." According to K.B., appellant and Johnson helped her post advertisements for the purpose of prostitution on Backpage by taking pictures of K.B. and creating the "wording" for the ad. The advertisements were paid for through "Vanilla Visa" cards obtained by either K.B. or Johnson with money supplied by appellant. K.B. would then go on out-calls to have "sex with johns," and when she was "finished giving [her] services," she would give appellant "all of [her] money." K.B. testified that appellant's car was used to transport K.B. and Johnson to their out-calls, which sometimes occurred in Duluth and Moorhead; that appellant was often in the car during the out-calls; and that he established the "prices for her services." K.B. further testified that, in addition to being in a sexual relationship with appellant, he made her follow "certain rules," including not being "allowed to argue," doing "[e]verything he said," and calling him "Daddy." And if K.B. and Johnson did not follow his rules, appellant would "get physical."

K.B.'s two small children eventually joined her and Johnson at appellant's Jackson Street apartment. But on April 19, 2015, when K.B. tried to leave the apartment with her children, appellant assaulted K.B. and would not let her leave. K.B. testified that a week or two later, appellant beat her children with a belt for making a mess in a bedroom. The children suffered bruises to their arms, backs, and stomachs, and one of the girls still has a permanent scar on her face. K.B. and her children left the apartment on April 30, and did not return.

In May 2015, appellant met R.C. at a gas station the day she graduated from college. Shortly thereafter, R.C. went to appellant's apartment, where they had sex. R.C. testified that she eventually realized that appellant was a "pimp," and that the women who were living with him were his prostitutes. R.C. also testified that appellant wanted her to "become familiar" with the websites advertising his services. According to Johnson, appellant was "trying to recruit [R.C.] into the business" because she was a college graduate and could help make it "legitimate." R.C. testified that although appellant never specifically asked her to prostitute for him, he did ask her to give "massages for money," which she understood to mean was the first "step" into prostitution. R.C. further testified that she soon became "[p]aranoid" about appellant, and on May 26, 2015, she called 911 to report appellant's prostitution business.

T.H. was staying at appellant's apartment during the time period that appellant was attempting to "recruit[ ]" R.C. "into the business." According to Johnson, she and appellant met T.H. at a restaurant. A few days later, T.H. began frequenting the Jackson Street address, and Johnson helped her create and post advertisements on Backpage. Johnson also testified that she went on "out-calls" with T.H., saw T.H. "collect money" from "johns," and assumed that T.H. gave the money to appellant. T.H. did not testify at trial.

J.S. and S.M. testified that they met appellant on May 15, 2015, while both were residing at a sober house in St. Paul. According to the women, they were walking back from a coffee shop when appellant and Trapps[1] pulled up in a white SUV and insisted that the women accompany them to appellant's apartment. J.S. and S.M. reluctantly agreed, and upon their arrival at the apartment, Trapps raped S.M. and appellant forced J.S. to perform oral sex on him. After appellant ejaculated on her face, he told J.S. that she "could make a lot of money with that mouth," and told her that he would "hook [her] up with something tonight." According to J.S., she understood appellant's comments to mean that he wanted her to work for him as a prostitute. Appellant then instructed Johnson to talk to J.S. and S.M. about working as prostitutes and to "get them ready" to begin working. Appellant and Trapps left the apartment, and J.S. and S.M. left shortly thereafter.

A.B. testified that in early June 2015, she posted on Facebook that she needed some "weed" and someone to "vent to" because she was estranged from her parents and "frustrated" with her living situation. Appellant responded to the post, and the two smoked marijuana together. The next day, appellant brought A.B. to his apartment. According to A.B., she believed that she was appellant's "girlfriend" and that Johnson was appellant's "working girl." But shortly after they arrived at the apartment, appellant directed Johnson to create a new email account for A.B., and to post a prostitution advertisement for her on Backpage. That afternoon, A.B. went on an out-call with Johnson. A.B. testified that after meeting with the john, Johnson gave "all of the money" to appellant.

Later that day, A.B. packed all her "stuff" and she and her three-year-old son moved into appellant's apartment. A.B. testified that over the course of the next eight days, Johnson, at appellant's direction, would create ads for her on Backpage. These were paid for by Vanilla Visa cards that were purchased by appellant "for the purpose of the ads." Appellant then directed her to go on out-calls, where she had sex with men for money. Appel-

---

1. Trapps was a friend of appellant's whom appellant was training to become a pimp.

lant sometimes drove to the out-calls, and A.B. was often accompanied by T.H. and Johnson.

On June 13, 2015, A.B. and Johnson got into a fight and A.B. hit Johnson. When they returned to the apartment, appellant physically assaulted A.B. for punching Johnson. According to A.B., appellant choked her, punched her in the side of the head, made her ears bleed, and held her face underwater in the bathtub. A.B. eventually convinced appellant to take her to the hospital, where she told staff that appellant was prostituting her.

A.B.'s statements prompted a police investigation, and appellant's vehicle was stopped by law enforcement at about 10:00 p.m. on June 13. Inside the car were two cell phones, prepaid Visa cards, and "multiple condoms." W.M-H., a 17-year-old female, was also in the vehicle when appellant was stopped. W.M-H. initially told police that appellant asked her if she was comfortable with stripping and prostitution and whether she would work for him making money in exchange for sex. But at trial, W.M-H. recanted her story and claimed that she did not remember much of what she told law enforcement.

The jury found appellant guilty of all charged offenses except Counts 11 and 12 involving W.M.-H. Following a sentencing trial, the jury also found 15 aggravating factors. The district court then imposed consecutive sentences for the four counts of aiding and abetting second-degree sex trafficking and the three counts of second-degree solicitation to practice prostitution. The district court also imposed concurrent sentences for the third-degree criminal-sexual-conduct offense and the domestic-assault offense; the district court did not pronounce a sentence for the conspiracy offense. The total length of appellant's sentence is 700 months. This appeal followed.

## ISSUES

I. Did the district court err by denying appellant's motion to sever under Minn. R. Crim. P. 17.03, subd. 3?

II. Did the district court commit prejudicial plain error by not instructing the jury that R.C. was an accomplice and that her testimony on the charges related to T.H. had to be corroborated?

III. Is there sufficient evidence to sustain appellant's conviction of soliciting R.C. to engage in prostitution?

IV. Did the prosecutor engage in prejudicial misconduct during her closing arguments?

V. Was appellant's sentence unlawfully enhanced?

VI. Do the arguments raised in appellant's pro se supplemental brief have merit?

## ANALYSIS

### I.

Appellant challenges the district court's denial of his motion to sever the charges involving A.B. from the remaining ten charges. We review a district court's decision regarding whether to sever charges or offenses de novo. *State v. Fitch*, 884 N.W.2d 367, 378 (Minn. 2016).

Minn. R. Crim. P. 17.03, subd. 3(1), governs severance of joined criminal offenses. This rule provides:

> On motion of the prosecutor or the defendant, the [district] court must sever offenses or charges if:
>
> (a) the offenses or charges are not related;
>
> (b) before trial, the court determines severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense or charge; or

(c) during trial, with the defendant's consent or on a finding of manifest necessity, the court determines severance is necessary to fairly determine the defendant's guilt or innocence of each offense or charge.

Minn. R. Crim. P. 17.03, subd. 3(1). Thus, rule 17.03, subd. 3(1)(a), requires severance. of offenses that are "not related." But if joined offenses are related, a district court may still sever them under Minn. R. Crim. P. 17.03, subd. 3(1)(b), (c), provided the requirements of those paragraphs are satisfied. *See State v. Ross*, 732 N.W.2d 274, 278 (Minn. 2007).

■ In *Ross*, our supreme court considered the interplay between rule 17.03, subdivision 3, and Minn. Stat. § 609.035, subd. 1 (2006), which mandated that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." 732 N.W.2d at 277-78 (quotation omitted). The supreme court interpreted the phrase "conduct constitutes more than one offense" from section 609.035, subdivision 1, to "mean the same thing as the term 'related' in Rule 17.03, subdivision 3(1)(a)." *Id.* As a result, the supreme court stated that when determining the applicability of those provisions, the same analysis is applicable in both contexts. *Id.* The supreme court stated that "[t]his analysis requires a court to determine whether two or more offenses are 'part of a single behavioral incident.'" *Id.* (quoting *State v. Profit*, 591 N.W.2d 451, 460 (Minn. 1999)). "In determining whether offenses were part of a single behavioral incident, we look to the time and place of the offenses and whether the offenses were motivated by a single criminal objective." *Fitch*, 884 N.W.2d at 378-79.

Appellant argues that the district court erred by denying his motion to sever "because the offenses involving [A.B.] and the ten additional counts were not part of a single behavioral incident." We disagree. The record reflects that all of the offenses occurred within a period of a few months, and each count of the complaint overlapped .with the time period of another count. For example, appellant was involved with trafficking A.B. during the same time period he was trafficking T.H. Moreover, all of the offenses occurred in the same geographical vicinity. Although much of the activity occurred throughout the Twin Cities metro area, all of the victims were eventually brought to appellant's apartment. It was at this location that appellant solicited the women to engage in prostitution, directed Johnson to create advertisements on Backpage, and arranged for many of the out-calls. He also assaulted A.B. and sexually assaulted J.S. at his apartment. Therefore, the record indicates that the offenses are unified in time and place.

The record also suggests that the offenses are motivated by a single criminal objective—the operation of a criminal enterprise that traffics women in the sex trade. Throughout the time period alleged in the complaint, appellant sought to recruit vulnerable women into prostitution by luring them to his apartment under the guise of love and the promise of material possessions. He also sought to have more than one woman living at his apartment with the goal of creating a "family" atmosphere, which would be enticing to women, who lacked a strong family structure. Appellant would then convince or coerce these women to become involved in prostitution, direct Johnson to create advertisements for them on Backpage, instruct them in the rules of appellant's prostitution "game," and enforce the "rules" of

appellant's prostitution "game" with the subtle, and in the case of A.B., not so subtle threats of violence. Appellant and Johnson would also set up 'out-calls, and after a victim was paid by a john, the victim would give the cash to appellant. This "routine" occurred throughout the time-period alleged in the complaint. And as noted above, many of the individually charged offenses overlapped because they all furthered appellant's criminal objective of operating a criminal enterprise of trafficking women for sex. Thus, we conclude that all of the charged offenses are motivated by a single criminal objective.

Establishing that appellant's conduct constitutes a single behavioral incident does not end our analysis. Instead, Minn. R. Crim. P. 17.03 "requires severance of offenses, even related offenses, if severance is appropriate to promote a fair determination of the defendant's guilt— that is, joinder would unfairly prejudice the defendant." State v. Kendell, 723 N.W.2d 597, 608 (Minn. 2006) (quotation omitted). As a result, we must determine whether the district court erred by determining that joinder would not prejudice appellant. See id. at 607.

The supreme court has repeatedly and consistently held that joinder is not prejudicial if "evidence of each offense would have been admissible Spreigl evidence in the trial of the other." State v. Conaway, 319 N.W.2d 35, 42 (Minn. 1982). Five conditions must be met for Spreigl evidence to be admissible:

(1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

Ross, 732 N.W.2d at 282. "For purposes of analyzing whether prejudice resulted from improper joinder, [appellate courts] focus on the third, fourth, and fifth conditions." Id.

Appellant argues that he was "unfairly prejudiced by the joinder of 12 separate offenses" because there were three pieces of evidence that would not have been admissible as Spreigl evidence at a trial on the two initial counts pertaining to A.B. First, appellant contends that there is not clear and convincing evidence that appellant solicited W.M-H. to prostitute or that he was involved in a conspiracy to do so because he was acquitted of both charges related to W.M-H. But appellant never argued that any of the other sex-trafficking or solicitation counts should be severed from one another. As a result, appellant's claim that the offenses involving A.B. are not related to the other offenses is unpersuasive. Moreover, the supreme court has stated that a "jury's determination that a defendant is not guilty of a particular crime does not preclude a subsequent determination that, at the time of the trial, the defendant's participation in underlying conduct related to the acquitted offense was supported by clear and convincing evidence." Ross, 732 N.W.2d at 281.

Here, the record reflects that prior to trial, W.M-H. told police that she met appellant while she was waiting at the bus stop. W.M-H. also told police that appellant eventually took her to his Jackson Street apartment, where he introduced her to Johnson, and asked her if she was comfortable with stripping and prostitution. Additionally, the record reflects that W.M-H. was in appellant's Mercedes when the vehicle was stopped by police. This evidence clearly and convincingly shows that appellant solicited W.M-H. to prostitute or

that he was involved in a conspiracy to do so. Therefore, it likely would have been admissible as *Spreigl* evidence in a trial on the charges related to A.B.

Second, appellant argues that the criminal-sexual-conduct allegations against J.S. would have been inadmissible at a trial on the A.B. charges because it was "not relevant to whether [appellant] was trafficking [A.B.] or whether he physically assaulted her." We disagree. Evidence of the sexual-assault charges involving J.S. was consistent with A.B.'s testimony that appellant forced her to perform sex acts. Moreover, evidence of the offense involving J.S. is consistent with other victims who testified that they had sex with appellant before he coerced them into engaging in prostitution. In fact, J.S. testified that appellant asked her if she wanted to "work for him" and that she "could make a lot of money with that mouth." The evidence of the criminal-sexual-conduct charges involving J.S. was probative, and thus relevant to, the charges pertaining to A.B.

Third, appellant claims that evidence that he beat K.B.'s children would not have been relevant or probative if the additional charges had not been joined at trial.[2] But this evidence was relevant to the charges pertaining to A.B. because she had a child, and the challenged evidence was consistent with testimony from A.B. indicating that she was afraid appellant would hurt her son if she refused to engage in prostitution.

Finally, we note that even if we were to conclude that the two offenses involving A.B. were unrelated to the ten additional charged offenses, the result would be the same because the "ultimate question in a severance claim is one of prejudice." *Profit*, 591 N.W.2d at 460 (quotation omitted). "[I]mproper joinder of two offenses [is] not

prejudicial when evidence of either offense could have been properly admitted as *Spreigl* evidence in the trial of the other offense." *Ross*, 732 N.W.2d at 280. As previously discussed, the other charges would have been admissible as *Spreigl* evidence in a trial of the charges involving A.B. Thus, any improper joinder of the charges would not have been prejudicial.

In sum, appellant's offenses arose out of a singular behavioral incident, and appellant failed to establish that he was prejudiced by the joinder of the charges involving A.B. with the other charges. Accordingly, the district court did not err by denying appellant's motion to sever.

## II.

■ Appellant argues that he is entitled to a new trial on Count 10, pertaining to T.H., because the district court failed to instruct the jury that R.C. was an accomplice and that her testimony related to that offense had to be corroborated. But appellant did not object to the lack of an accomplice jury instruction at trial. Thus, the issue is reviewed for plain error. *See State v. Washington-Davis*, 881 N.W.2d 531, 541 (Minn. 2016). Under the plain-error test, we must determine whether the jury instructions (1) contained an error, (2) that was plain, and (3) affected appellant's substantial rights. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). If appellant establishes these three prongs, we may correct the error "only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Washington-Davis*, 881 N.W.2d at 541 (quotation omitted).

■ Our supreme court has "required district courts to instruct juries on accomplice testimony in any criminal case in which it is reasonable to consider any witness against the defendant to be an accom-

---

2. We note that appellant not charged with any offense related to K.B.'s children.

plice." *State v. Horst*, 880 N.W.2d 24, 37 (Minn. 2016) (quotation omitted). Such an instruction "informs the jury that an accomplice's testimony must be corroborated by other evidence that tends to convict the defendant of the crime." *Id.* (quotation omitted). A district court must give an accomplice-corroboration instruction if a witness "could have been indicted and convicted for the crime with which the accused is charged." *State v. Lee*, 683 N.W.2d 309, 314 (Minn. 2004) (quotation omitted).

The district court instructed the jury that Trapps and Johnson were accomplices, but did not provide an accomplice instruction related to R.C. Appellant argues that because R.C. admitted to assisting appellant with the prostitution business while T.H. was working as a prostitute for appellant, she could have been charged with aiding and abetting the trafficking of T.H. Thus, appellant contends that the district court "committed plain error by failing to instruct the jury that [R.C.] was an accomplice."

We disagree. R.C. admitted that she knew that appellant ran "an escort service," and that appellant wanted her "to become familiar" with the online advertising of his escort services. R.C. also testified about an occasion when she was present in the car with appellant, Trapps, and another woman during out-calls, and that appellant "just handed" her a phone that was used to set up out-calls. But R.C. testified that she "only had the phone one time" because it was taken away from her in the car ride after she "accidentally messaged" Johnson's father. Moreover, R.C. testified that she never became familiar with the advertising websites because she did not "understand" them. Consequently, appellant's assertion that R.C. admitted to assisting appellant with the prostitution business misconstrues R.C.'s testimony.

Instead, rather than being an accomplice, R.C.'s testimony demonstrates that she was a victim in this case. The record reflects that appellant courted R.C. at a gas station, developed a sexual relationship with her, and eventually asked her to give "massages for money," which R.C. understood to be the first "step" into prostitution. R.C.'s testimony was consistent with the testimony of other victims concerning appellant's modus operandi. Therefore, the district court did not err by not instructing the jury that R.C. was an accomplice.

## III.

In reviewing the sufficiency of the evidence in a criminal case, appellate courts are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a fact-finder could reasonably conclude that the defendant was guilty of the offense charged. *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn. 2004). The evidence is considered in the light most favorable to the verdict. *Id.* at 477. We assume the fact-finder believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Porter*, 674 N.W.2d 424, 427 (Minn.App. 2004).

Count 5 of the complaint charged appellant with second-degree solicitation of R.C. to engage in prostitution. " 'Prostitution' means hiring, offering to hire, or agreeing to hire another individual to engage in sexual penetration or sexual contact, or being hired, offering to be hired, or agreeing to be hired by another individual to engage in sexual penetration or sexual contact." Minn. Stat. § 609.321, subd. 9 (2014).

Appellant argues that there was insufficient evidence to sustain the jury's verdict of soliciting R.C. to engage in prostitution because he "never asked her to prostitute herself." We disagree. Although R.C. testified that appellant "never asked me in

those words" to "prostitute" herself, she stated that appellant encouraged her to "give massages for money." R.C. also testified that T.H. told her that "she didn't start off by having sex, she started off by giving massages." As a result, R.C. testified that she understood appellant's request that she "give massages for money" to be the first step toward prostituting. R.C.'s testimony is consistent with Trapp's claim that appellant "was trying to get [R.C.] to prostitute," "but she wasn't down with it." Moreover, R.C.'s testimony is consistent with the testimony of the other witnesses regarding appellant's modus operandi: that appellant would pursue women, engage in a sexual relationship with them, and then begin prostituting them, sometimes without even specifically mentioning prostitution. As Johnson testified, appellant was "good at ... saying something without saying it." Thus, when viewed in the light most favorable to the verdict, we conclude that the evidence is sufficient to sustain appellant's conviction of soliciting R.C. to engage in prostitution.

## IV.

Appellant argues that the prosecutor engaged in prejudicial misconduct in her closing argument. Because appellant did not object to the prosecutor's closing argument at trial, we apply a modified plain-error test. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). To prevail, appellant must first establish that there is an error and that the error is plain. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). If appellant satisfies this burden, the burden shifts to the state to show that the error did not affect appellant's substantial rights. *Id.* The error does not affect substantial rights if "there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotations omitted).

A prosecutor has "an affirmative obligation to ensure that a defendant receives a fair trial, no matter how strong the evidence of guilt." *Id.* at 300. A prosecutor's closing arguments must be "based on the evidence produced at trial, or the reasonable inferences from that evidence." *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995). A closing argument is improper if it "could have only been intended to inflame the jury's passions and prejudices" and is a "blatant attempt to impinge on juror independence." *Id.* at 364. When assessing alleged prosecutorial misconduct during a closing argument, we look to "the closing argument as a whole, rather than to selected phrases and remarks." *State v. Graham*, 764 N.W.2d 340, 356 (Minn. 2009) (quotation omitted).

Appellant argues that the prosecutor engaged in prosecutorial misconduct "by referring to inadmissible evidence regarding possible reasons why [T.H.] did not testify and by telling the jury that 'snitches who are bitches totally end up in ditches.'" But assuming, without deciding, that the prosecutor engaged in misconduct, we conclude that any misconduct was not prejudicial. The alleged misconduct involved a couple of short statements in a closing argument, the transcript of which is more than 50 pages long. *See Graham*, 764 N.W.2d at 356 (stating that when assessing alleged prosecutorial misconduct an appellate court examines the closing argument as a whole). Moreover, the evidence against appellant was very strong. Victim after victim testified that appellant lured her into a sexual relationship before convincing her to prostitute for him. These victims testified that Johnson would then create ads on Backpage, which were paid for by Vanilla Visa cards obtained by appellant. The victims further testified that out-calls with johns were arranged by appellant and

Johnson, and that after meeting with a john, the victims would give the money to appellant. In addition, Trapps and Johnson testified consistently with the victims about how appellant masterminded his sex-trafficking scheme. And a sex-trafficking expert described similarities between appellant's operation and other prostitution schemes that have been uncovered throughout the country. Based on the overwhelming evidence of appellant's guilt that was presented at trial, we conclude that the challenged isolated statements in the lengthy closing argument was not prejudicial.

## V.

District courts have broad sentencing discretion. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014). On appeal, we "may review the sentence imposed or stayed to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court." Minn. Stat. § 244.11, subd. 2(b) (2014). Whether a statute or a provision of the sentencing guidelines has been properly construed is a question of law to be reviewed de novo. *State v. Zeimet*, 696 N.W.2d 791, 793 (Minn. 2005).

In *Apprendi v. New Jersey*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000). In Minnesota, the presumptive sentence prescribed by the sentencing guidelines is " 'the maximum sentence a judge may impose solely on the

basis of the facts reflected in the jury verdict or admitted by the defendant.' ". *State v. Shattuck*, 704 N.W.2d 131, 141 (Minn. 2005) (quoting *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004)).

A defendant convicted of second-degree sex-trafficking or second-degree solicitation to practice prostitution is subject to imprisonment for not more than 15 years. Minn. Stat. § 609.322, subd. 1a (2014). The presumptive sentence for these offenses, with a criminal-history score of zero, is 48 months. Minn. Sent. Guidelines 4.B (2014) (sex-offender grid). But if certain statutory aggravating factors are present, the maximum imprisonment for these offenses is not more than 25 years. Minn. Stat. § 609.322, subd. 1(b). The "presumptive sentence" is then "determined by locating the duration in the appropriate cell on the applicable Grid defined by the offender's criminal history score and the underlying crime with the highest severity level, or the mandatory minimum for the underlying crime, whichever is longer, and adding" 48 months. Minn. Sent. Guidelines 2.G.9.a (2014).

Here, appellant was charged with four counts of second-degree sex-trafficking in violation of Minn. Stat. § 609.322, subd. 1a(4), and three counts of second-degree solicitation to practice prostitution in violation of Minn. Stat. § 609.322, subd. 1a(1). The state also alleged that the following statutory aggravating factor was present: the offense involved more than one sex-trafficking victim in violation of Minn. Stat. § 609.322, subd. 1(b)(4). Because the jury found appellant guilty of these seven charged offenses, the district court added 48 months to the sentence for each of appellant's seven convictions, and ordered the sentences to be served consecutively.[3]

---

3. Appellant was sentenced first for Count 8.

Because appellant had a criminal-history

Appellant claims that the jury was never asked, either at trial or during the *Blakely* phase, whether any of the offenses under section 609.322, subd. 1a, involved more than one sex-trafficking victim. Appellant argues that because the jury did not find this aggravating factor, the 48-month sentencing enhancement for each conviction violates the principles established in *Blakely* and *Apprendi.*[4]

Despite appellant's argument to the contrary, *Blakely* and *Apprendi* are not implicated here. When an offense under section 609.322, subdivision 1a, involves multiple victims, the presence of this aggravating factor increases the presumptive sentence. *See* Minn. Stat. § 609.322, subd. 1(b); *see also* Minn. Sent. Guidelines 2.G.9. (stating that the *"presumptive sentence* is determined by locating the duration in the appropriate cell on the applicable Grid" and adding "48 months, if the underlying crime was completed" (emphasis added)). In other words, section 609.322, subdivision 1(b), establishes the statutory maximum sentence for a crime committed under section 609.322, subdivision 1a, when the aggravating factor of multiple victims is present, and the sentencing guidelines establish the presumptive sentence for such an offense. As a result, the multiple-victims aggrava-

ting factor does not increase the penalty for the offense beyond the prescribed statutory maximum because such a penalty is established by statute. Because *Apprendi* and *Blakely* only prescribe procedures for imposing an aggravated sentence *above* the prescribed range, appellant's reliance on those cases is misplaced. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362-63 (holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *Blakely,* 542 U.S. at 305, 124 S.Ct. at 2538 (holding that sentencing departures above a statutory maximum must be based on facts found by the jury, rather than the judge, to be valid under the Sixth Amendment); *see also Shattuck,* 704 N.W.2d at 141 (explaining that the "statutory maximum" sentence referred to in *Apprendi* and *Blakely* is the maximum sentence that a judge may impose without additional findings, i.e., the top of the guidelines range).

Nonetheless, our review of section 609.322 indicates that appellant's sentence is inconsistent with the plain language of the statute. *See* Minn. Stat. § 244.11, subd. 2(b) (stating that this court may "review

score of 2, appellant's presumptive sentence for the offense of second-degree sex trafficking was 76 months. *See* Minn. Sent. Guidelines 4.B (sex-offender grid). The district court then added 48 months under Minn. Sent. Guidelines 2.G.9.a, for a total sentence of 124 months. For the remaining six counts, the presumptive sentence was 48 months for each offense. The district court then added 48 months to each count under 2.G.9.a of the sentencing guidelines, for a total sentence for each count of 96 months. *See* Minn. Sent. Guidelines 2.F.2.a (2014) (stating that district court must use a criminal-history score of zero when imposing permissive consecutive sentences). The district court further ordered each count to be served consecutively, for a total aggregate sentence of 700 months.

4. Although we previously concluded that appellant's offenses were part of the same course of conduct, we note that appellant does not allege that his sentence conflicts with Minn. Stat. § 609.035 (2014), which generally prohibits multiple sentences for two or more offenses that were committed as part of a single behavioral incident. *But see State v. Skipintheday,* 717 N.W.2d 423, 426 (Minn. 2006) (stating that under the multiple-victim exception, "courts are not prevented from giving a defendant multiple sentences for multiple crimes arising out of a single behavioral incident if: (1) the crimes affect multiple victims; and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct").

the sentence imposed ... to determine whether the sentence is inconsistent with statutory requirements"). Under section 609.322, the state could charge an offender who is suspected of operating a sex-trafficking or prostitution scheme involving multiple victims with the offense of sex-trafficking, or solicitation to practice prostitution, and the charged offense could include more than one victim. The maximum sentence permitted by statute would then increase under 609.322, subdivision 1(b)(4), and the presumptive sentence would increase by 48 months under 2.G.9(a) of the sentencing guidelines because the charged offense specifically alleged the aggravating factor of multiple victims. Alternatively, as the state did here, an offender could be charged with a single count of sex-trafficking, or solicitation to practice prostitution, in the second degree for each alleged victim. But the aggravating factor of multiple victims set forth in section 609.322, subdivision 1(b)(4), would not be applicable because each separate count referenced only one victim. Consequently, the presumptive sentence would be 48 months, rather than the 96 months established under Minn. Sent. Guidelines 2.G.9(a), because the aggravating factor of multiple victims contemplated in section 609.322, subdivision 1(b), is not present in each separately charged offense. Although the state could seek to enhance the sentence by imposing permissive consecutive sentences, *see* Minn. Sent. Guidelines 2.F.2.a.(1)(ii) (2014), the consecutive sentences would be 48 months rather than 96 months.

The state argues that "[a] more reasonable interpretation of 'offense' in the sex-trafficking context is one that refers to the entire ongoing, sprawling commercial-sex-trade scheme—not the individual acts of solicitation, promotion and sex trafficking that occur within such an enterprise." The state argues that, based on this broader interpretation of the term "offense," the multiple-victims aggravating factor can be used to enhance each individual count because "offense" refers to appellant's sex-trafficking scheme.

We disagree. The term "offense" is not defined in Minn. Stat. § 609.322 (2014). "In the absence of a statutory definition, we generally turn to the plain, ordinary meaning of a statutory phrase," and will look to dictionary definitions when a word or phrase in a statute is undefined. *State v. Haywood*, 886 N.W.2d 485, 488 (Minn. 2016) (quotation omitted). The dictionary definition of "offense" is "[a] violation of the law; a crime...." *Black's Law Dictionary* 1186 (9th ed. 2009). Thus, the term "offense," as used in section 609.322, refers to each individually charged offense, not the general sex-trafficking scheme alleged by the state.

Here, appellant was charged with seven separate counts of engaging in the sex trafficking of an individual and soliciting or inducing an individual to practice prostitution. Although all seven counts alleged a different victim, each individual count alleged a single victim. Moreover, the jury instructions did not list multiple victims as an element of the individually charged offenses. In other words, the jury was not asked if there were multiple victims for any of the alleged offenses of sex-trafficking, or solicitation to practice prostitution. Therefore, appellant's sentence is inconsistent with Minn. Stat. § 609.322 and the sentencing guidelines because the multiple-victims aggravating factor set forth in section 609.322, subdivision 1(b)(4), was not applicable to any of appellant's convictions. Instead, the district court's reliance on the same factor—multiple victims—to impose a longer presumptive sentence and a consecutive sentence violates the principle that the district court may not impose a sentence that punishes a

defendant twice for the same conduct. *See State v. Thompson*, 720 N.W.2d 820, 830 (Minn. 2006) (stating that impermissible double-counting arises when the defendant is convicted of and sentenced for multiple counts and the district court uses the conduct underlying one count to support the aggravated factor on another count); *see also State v. O'Hagan*, 474 N.W.2d 613, 624 (Minn.App. 1991) (holding that the district court could not use multiple victims as aggravating factor when defendant was convicted of and sentenced on separate counts for each of two victims, but court could consider multiple incidents against each victim), *review denied* (Minn. Sept. 25, 1991).

 The state contends that even if the term "offense" refers to each separately charged offense, appellant's "sentence is still authorized by the 15 separate aggravating factors the jury did explicitly find." Indeed, the state is correct that 15 aggravating factors were found by the jury, which would have allowed the district court to sentence appellant to an upward departure. But when departing from the sentencing guidelines, a district court "must articulate substantial and compelling circumstances justifying the departure." *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015) (quotation omitted). Here, neither the sentencing transcript nor the warrant of commitment reflects that any of the sentences imposed for appellant's convictions was "a departure from the sentencing guidelines." And because the district court did not depart, it did not articulate reasons to support a departure. *See State v. Rourke*, 773 N.W.2d 913, 920 (Minn. 2009) (stating that, when departing from the sentencing guidelines, the district court must explain why the circumstances

or additional facts found by the jurors in a *Blakely* trial provide the court with a substantial and compelling reason to impose a sentence outside the range on the grid). Accordingly, because the district court declined to depart from the sentencing guidelines, and the sentence imposed is inconsistent with section 609.322, we reverse appellant's sentence and remand for resentencing. *See State v. Washington-Davis*, 867 N.W.2d 222, 241 (Minn.App. 2015), *aff'd* 881 N.W.2d 531 (Minn. 2016).[5]

## VI.

Finally, appellant filed a pro se supplemental brief arguing that (1) he was denied his right to confront T.H.; (2) he received ineffective assistance of counsel; (3) he was denied his counsel of choice; (4) the jury instructions were erroneous; (5) the evidence was insufficient to sustain the jury's guilty verdicts for several of the counts in the complaint; and (6) he was denied his right to an impartial jury. We have considered these arguments and conclude that they are without merit.

## DECISION

Appellant is unable to show that the district court erred by denying his motion to sever under Minn. R. Crim. P. 17.03, subd. 3, or that he is otherwise entitled to a new trial. But appellant's sentence is inconsistent with the plain language of Minn. Stat. § 609.322, because the aggravating factor of multiple victims found in section 609.322, subdivision 1(b), and used to enhance appellant's sentence, is not present in each separately charged offense. Accordingly, we affirm in part, reverse in part, and remand for proceedings not inconsistent with this opinion.

---

**5.** We note that because we conclude that appellant's sentence is inconsistent with Minn. Stat. § 609.322, we need not address the claim raised in appellant's pro se supplemental brief that his sentence unfairly exaggerates the criminality of his offense.

Affirmed in part, reversed in part, and remanded.