# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0133

State of Minnesota,
Respondent,

vs.

Korwin Lucio Balsley,
Appellant.

**Filed December 4, 2023**
**Affirmed**
**Segal, Chief Judge**

Redwood County District Court
File No. 64-CR-21-461

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Jenna M. Peterson, Redwood County Attorney, Redwood Falls, Minnesota; and

Travis J. Smith, William C. Lundy, Special Assistant County Attorneys, Slayton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Segal, Chief Judge; and Wheelock, Judge.

## SYLLABUS

A predatory crime was "previously committed or attempted to be committed," for the purposes of enhancing a sentence under the engrained-offender statute, Minn. Stat.

§ 609.3455, subd. 3a(a)(2), (b)(2) (2022),[1] if it was committed or attempted to be committed before the point in time when the fact finder determines whether the criteria for sentencing as an engrained offender have been satisfied.

## OPINION

**SEGAL**, Chief Judge

Appellant was convicted of two counts of second-degree criminal sexual conduct following a court trial. The district court sentenced appellant to serve an enhanced sentence of 250 months in prison, followed by a lifetime period of conditional release. Appellant challenges his convictions, arguing that the evidence is insufficient to support the guilty verdicts because inconsistencies in the victim's testimony render it unreliable. Alternatively, appellant argues that the district court erred in imposing an enhanced sentence because he does not qualify as a dangerous offender or an engrained offender. Minn. Stat. §§ 609.1095, subd. 2, .3455, subd. 3a (2014). Appellant also maintains that the district court erred by imposing a lifetime period of conditional release because appellant was not charged by indictment. We affirm.

## FACTS

In the summer of 2021, E.B. told her mother that she had been sexually abused some years earlier by one of her mother's former boyfriends, appellant Korwin Lucio Balsley. Balsley and E.B.'s mother had dated for several months in 2015, when E.B. was nine years

---

[1] We cite to the current version of subdivision 3a(a)(2) and (b)(2) because the relevant provisions are the same as the version in effect at the time the offenses in this case were committed.

2

old.  A few days after E.B. disclosed the sexual abuse to her mother, E.B. repeated the allegation to her father.  E.B.'s father alerted her school counselor who then met with her.  E.B. told the counselor that one night, when E.B. was staying with her mother at Balsley's house (the Ranch Avenue farmhouse), Balsley went into a loft area where she was sleeping and touched her vagina and breasts underneath her clothing.  E.B. said that she was nine years old when this happened.  The school counselor reported the incident to law enforcement, who arranged for E.B. to participate in a forensic interview.

During the forensic interview, E.B. again asserted that Balsley had sexually abused her when she was nine years old.  She stated that one night, when she, her brother, and her mother were staying with Balsley, she was in bed on a mattress on the floor in a loft-like area when Balsley came up the stairs and stood by the bed.  E.B. reported that Balsley stood there for a while before he pulled down the blanket that was covering E.B. and started touching her.  When the forensic interviewer asked E.B. to describe where Balsley touched her, E.B. stated that Balsley touched her bare breasts then put his hands down her underwear and touched her vagina while moving his hands in a circular motion.  E.B. estimated that Balsley touched her for about five to ten minutes but stopped when E.B. heard the front door open and someone come inside; Balsley then whispered not to tell anyone and left the room.  E.B. was unsure of the date the incident occurred, but she said that it was sometime after her brother's birthday in late June.  E.B. was also unsure where the Ranch Avenue farmhouse is located, but stated that it may be near Cobden, Minnesota.

Respondent State of Minnesota charged Balsley with four counts of second-degree criminal sexual conduct.  Two counts were based on the allegation that Balsley had sexual

3

contact with E.B. when she was under the age of 13, and the other two counts were based on the allegation that Balsley had sexual contact with E.B. and that they had a significant relationship.[2] The state later filed notice of its intent to seek an aggravated sentence based on the alleged presence of aggravating factors, including two sentencing enhancement statutes.

Balsley waived his right to a jury trial and the district court bifurcated the trial into a guilt phase and a sentencing phase. During the guilt phase, E.B. testified consistently with her prior allegations and stated that Balsley touched her breasts and vagina with his hands when she was nine years old. She viewed a photograph of the Ranch Avenue farmhouse and testified that she was "[o]ne hundred percent" certain that it was the house where the incident occurred and that she was certain Balsley was the person who touched her. E.B.'s mother testified and confirmed that she and Balsley dated for about four months in 2015, and that E.B. and her brother once stayed the night at the Ranch Avenue farmhouse during the summer of 2015. She also testified that she did not leave the children alone at the house with Balsley but did go outside to smoke. E.B.'s father testified that he dropped off and picked up E.B. and her brother at the Ranch Avenue farmhouse once in the summer of 2015.

The defense presented evidence that a different former boyfriend of E.B.'s mother also lived in a farmhouse (the 320th Avenue farmhouse), suggesting that E.B. was mistaken about where the sexual abuse occurred and the perpetrator's identity. E.B.'s mother

---

[2] The state brought two charges under each provision based on E.B.'s assertion that Balsley touched both her vagina and breasts.

4

testified that she dated that former boyfriend off and on for nine years and that E.B. "[o]ften" visited the 320th Avenue farmhouse during those years. An investigator for the defense testified that the 320th Avenue farmhouse is closer to Cobden than the Ranch Avenue farmhouse.

The district court found Balsley guilty of the two counts of second-degree criminal sexual conduct involving sexual contact with a victim under 13, but not guilty of the two counts of second-degree criminal sexual conduct involving a significant relationship. After the close of the sentencing phase of the trial, the district court determined that the state failed to prove two of the alleged aggravating factors beyond a reasonable doubt. But the district court found that Balsley was eligible to receive an enhanced sentence as both a dangerous offender and an engrained offender. The district court sentenced Balsley to 250 months in prison, followed by a lifetime period of conditional release.

## ISSUES

I.      Is the evidence sufficient to support Balsley's convictions?

II.     Did the district court err in determining that Balsley met the statutory criteria to be sentenced as a dangerous offender and as an engrained offender?

III.    Did the district court err in imposing a lifetime period of conditional release?

## ANALYSIS

**I.      The evidence is sufficient to support the convictions.**

Balsley argues that inconsistencies in E.B.'s testimony cast doubt on the reliability of her testimony and render it insufficient to support his convictions. When considering a sufficiency-of-the-evidence challenge, "appellate courts carefully examine the record to

5

determine whether the facts and the legitimate inferences drawn from them would permit the [fact finder] to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). We view the evidence in the light most favorable to the verdict and assume the fact finder believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). "The verdict will not be overturned if the fact-finder, upon application of the presumption of innocence and the State's burden of proving an offense beyond a reasonable doubt, could reasonably have found the defendant guilty of the charged offense." *Griffin*, 887 N.W.2d at 263.

Generally, "a conviction can rest on the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted). And in prosecutions for criminal-sexual-conduct offenses, the Minnesota statutes dictate that "the testimony of a victim need not be corroborated." Minn. Stat. § 609.347, subd. 1 (2014).

In this case, E.B.'s testimony alone establishes the elements of criminal sexual conduct, which requires proof of "the intentional touching by the actor of the complainant's intimate parts." Minn. Stat. §§ 609.341, subd. 11(a)(i), .343, subd. 1(a) (2014). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttocks, or breast of a human being." Minn. Stat. § 609.341, subd. 5 (2014). E.B. testified at trial that Balsley touched her bare breasts and then put his hands down her underwear and touched her vagina— establishing "touching by the actor of the complainant's intimate parts." Minn. Stat. § 609.341, subd. 11(a)(i). She also testified that Balsley pulled down the blanket that was

6

covering her and, after he touched her breasts and vagina, she heard him take off his belt. She testified that she next heard the door to the house open, and Balsley then whispered to her not to tell anyone and went back downstairs. This testimony, and the reasonable inferences that can be drawn from it, provide adequate evidence that the sexual contact was "intentional." *Id.* Under case precedent and Minn. Stat. § 609.347 (2014), E.B.'s testimony satisfies the state's burden of proof.

Balsley nevertheless maintains that the state failed to satisfy its burden because E.B.'s testimony contained inconsistencies that placed her credibility in doubt. *See Foreman*, 680 N.W.2d at 539 (distinguishing cases where a victim's testimony was found to be insufficient on the grounds that "each involved additional reasons to question the victim's credibility"). The alleged inconsistencies in E.B.'s testimony include a statement E.B. made during the forensic interview that the farmhouse may be near Cobden, inconsistencies about the location of trees or shrubs by the house, whether a bunkbed in the loft area was assembled or disassembled, and the sequence of when she told her brother and one of her friends about the sexual assault. Balsley contends that these inconsistencies constitute grounds for reversing the district court's finding that E.B.'s testimony was credible and establish that E.B. was likely confused about the location of the assault and the identity of the perpetrator.

The district court considered Balsley's argument but rejected it, concluding that the inconsistencies identified by Balsley were "limited discrepancies" that "concerned matters not directly related to the charges." The district court discounted the significance of E.B.'s statement that she thought Balsley's house might be near Cobden because her statement

7

was equivocal—E.B. acknowledged that she was not sure of the location. The district court also observed that E.B.'s "inability to recall with specificity the location of trees and shrubs is offset by her specific and certain identification of the Ranch Avenue [farmhouse] as the location of the assault and the [significant amount] of time she spent at the 320th street [farmhouse]." As to whether the bunkbed was assembled or disassembled, the district court noted that, regardless, "[a]ll witnesses note . . . that the bunkbed was there." The district court similarly found that any inconsistency about whether E.B. disclosed the sexual assault first to her brother or to her friend was not significant. The district court's findings about the inconsistencies are logical, and we discern no basis to overturn the district court's finding that E.B.'s testimony was credible.

Moreover, the cases Balsley cites in support of his argument are unique to their facts and easily distinguished. *See id.* In *State v. Huss*, the supreme court reversed a conviction based on the case's "unusual facts" where the only evidence of sexual abuse was provided by a very young child whose testimony was contradictory on central matters. The court also expressed concern that the child's allegations may have been influenced by repeated exposure to "a highly suggestive book" about sexual abuse. 506 N.W.2d 290, 292-93 (Minn. 1993). In *State v. Langteau*, the supreme court reversed a conviction for aggravated robbery and remanded for a new trial in a one-page opinion, noting only that the jury reached a speedy determination and that, "[u]nder all the circumstances, . . . the interests of justice [require] a new trial." 268 N.W.2d 76, 77 (Minn. 1978). In the third case, *State v. Gluff*, the supreme court reversed a conviction, but remanded for a new trial when the identification of the defendant was based on a tainted lineup, the witness only observed the

defendant for 30 seconds, and the witness's initial description to law enforcement did not match the defendant. 172 N.W.2d 63, 65 (Minn. 1969).

By contrast here, E.B. is a teenager, not a young child as in *Huss*. And E.B. consistently, without equivocation, described the sexual assault and identified Balsley as the perpetrator. She also identified a photograph of the Ranch Avenue farmhouse as the location of the offense, and accurately described the loft area where the assault occurred. In short, this case does not present any unusual circumstances that would justify a determination that E.B.'s testimony was not reliable. *See Foreman*, 680 N.W.2d at 539; *see also* Minn. Stat. § 609.347, subd. 1; *State v. Kramer*, 668 N.W.2d 32, 37 (Minn. App. 2003) (requiring deference to credibility findings), *rev. denied* (Minn. Nov. 18, 2003). We therefore conclude that the evidence is sufficient to support the guilty verdicts.

**II. The district court erred in determining that Balsley's criminal history qualified him to be sentenced as a dangerous offender, but we affirm the district court's sentencing of Balsley as an engrained offender.**

Balsley next argues that the district court erred in concluding that Balsley met the statutory criteria for an enhanced sentence as a dangerous offender and as an engrained offender. "We review a district court's decision to depart from the presumptive guidelines sentence for an abuse of discretion." *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). But "[w]hether a statute or a provision of the sentencing guidelines has been properly construed is a question of law to be reviewed de novo." *State v. Ivy*, 902 N.W.2d 652, 664 (Minn. App. 2017), *rev. denied* (Minn. Dec. 19, 2017).

9

**A.  Dangerous Offender under Minn. Stat. § 609.1095, subd. 2**

Balsley argues that the district court erred in sentencing him as a dangerous offender because Balsley did not, "at the time of sentencing," have "two or more prior convictions for violent crimes." Minn. Stat. § 609.1095, subds. 1(c), 2(1) (2014). The state agrees that the district court erred because Balsley had only one, not two, prior convictions for a violent crime at the time of sentencing. We also agree.

The statute provides that, when a district court is imposing an executed sentence for a violent felony, the district court may impose an enhanced sentence if:

> (1) the court determines on the record at the time of sentencing that the offender has two or more prior convictions for violent crimes; and
> (2) the fact finder determines that the offender is a danger to public safety. The fact finder may base its determination that the offender is a danger to public safety on the following factors:
> > (i) the offender's past criminal behavior, such as the offender's high frequency rate of criminal activity or juvenile adjudications, or long involvement in criminal activity including juvenile adjudications; or
> > (ii) the fact that the present offense of conviction involved an aggravating factor that would justify a durational departure under the Sentencing Guidelines.

*Id.*, subd. 2. The statute defines "prior conviction" as "a conviction that occurred before the offender committed the next felony resulting in a conviction and before the offense for which the offender is being sentenced under this section." *Id.*, subd. 1(c).

The two prior convictions relied on by the district court include a 2010 conviction of second-degree criminal sexual conduct and a 2017 conviction of second-degree assault. According to the presentence investigation report, the 2010 criminal-sexual-conduct

10

conviction was based on an offense that occurred in 2007; thus both the offense and conviction occurred before the offense and conviction in this case. But the 2017 assault conviction was based on an offense that occurred in 2016, and the offense therefore occurred *after* the offense in this case. Because the offense resulting in the 2017 conviction did not occur "before the offense for which the offender is being sentenced under this section," it does not satisfy the statutory definition of "prior conviction." *Id.* Balsley thus has only one prior conviction for a violent crime, and the district court erred in determining that Balsley met the statutory criteria to be sentenced as a dangerous offender under Minn. Stat. § 609.1095, subd. 2.

### B. Engrained Offender under Minn. Stat. § 609.3455, subd. 3a

Balsley also contends that the district court erred in determining that he met the statutory criteria to be sentenced as an engrained offender. The state disagrees. The applicable section provides:

> A court shall commit a person to the commissioner of corrections for a period of time that is not less than double the presumptive sentence under the sentencing guidelines and not more than the statutory maximum, or if the statutory maximum is less than double the presumptive sentence, for a period of time that is equal to the statutory maximum, if:
> (1) the court is imposing an executed sentence on a person convicted of committing or attempting to commit a violation of section 609.342, 609.343, 609.344, 609.345, or 609.3453;
> (2) the fact finder determines that the offender is a danger to public safety; and
> (3) the fact finder determines that the offender's criminal sexual behavior is so engrained that the risk of reoffending is great without intensive psychotherapeutic intervention or other long-term treatment or supervision

11

extending beyond the presumptive term of imprisonment and supervised release.

Minn. Stat. § 609.3455, subd. 3a(a). Balsley maintains that the district court erred in interpreting the second criterion—that he is "a danger to public safety." And Balsley also challenges the district court's findings on the third criterion—that his criminal sexual behavior is sufficiently "engrained." We address each argument in turn.

### 1.    Second Criterion—Danger to Public Safety

Subdivision 3a(b) of the engrained-offender statute sets out the factors to be considered when determining whether the second criterion—that the offender is a danger to public safety—is satisfied:

> The fact finder shall base its determination that the offender is a danger to public safety on any of the following factors:
> (1) the crime involved an aggravating factor that would justify a durational departure from the presumptive sentence under the sentencing guidelines;
> (2) the offender previously committed or attempted to commit a predatory crime or a violation of section 609.224 or 609.2242, including:
> (i) an offense committed as a juvenile that would have been a predatory crime or a violation of section 609.224 or 609.2242 if committed by an adult; or
> (ii) a violation or attempted violation of a similar law of any other state or the United States; or
> (3) the offender planned or prepared for the crime prior to its commission.

Minn. Stat. § 609.3455, subd. 3a(b).

Based on the evidence presented, the district court determined that Balsley was a danger to public safety under subdivision 3a(b)(2) because he previously committed a predatory crime. The definition of "predatory crime," as relevant here, includes second-

12

degree assault, but does not include second-degree criminal sexual conduct. Minn. Stat. § 609.341, subd. 22 (2014). Balsley's only conviction that satisfies the definition of "predatory crime" is his 2017 conviction for second-degree assault. But he argues that the 2017 conviction does not render him eligible for sentencing as an engrained offender because he committed the second-degree assault, the predatory crime, *after* he committed the criminal-sexual-conduct offenses at issue here.

Balsley's argument turns on the interpretation of the phrase "previously committed." Minn. Stat. § 609.3455, subd. 3a(b)(2). He argues that "a plain language interpretation would temporally connect 'previously committed' to the date of offense," and therefore the 2017 conviction cannot satisfy this requirement. In the alternative, he argues that, if this court determines that the statute is ambiguous, then the provision should be read in pari materia with other statutory provisions, including the statutory definitions of "previous sex offense conviction" and "prior sex offense conviction" in Minn. Stat. § 609.3455, subd. 1(f)-(g) (2014).[3] *See State v. Thonesavanh*, 904 N.W.2d 432, 437-38 (Minn. 2017) (discussing the canon of in pari materia).

We review questions of statutory interpretation de novo. *State v. Overweg*, 922 N.W.2d 179, 182-83 (Minn. 2019). Our goal in interpreting a statute is to effectuate the

---

[3] The term "previous sex offense conviction" means a sex-offense conviction for which "the offender was convicted and sentenced . . . before the commission of the present offense." Minn. Stat. § 609.3455, subd. 1(f). By contrast, the term "prior sex offense conviction" means a sex-offense conviction for which "the offender was convicted . . . before the offender has been convicted of the present offense, regardless of whether the offender was convicted for the first offense before the commission of the present offense." *Id.*, subd. 1(g). Accordingly, if the 2017 conviction had been for a sex offense, it would qualify as a "prior sex offense conviction" but not a "previous sex offense conviction."

13

intent of the legislature. *State v. Henderson*, 907 N.W.2d 623, 625 (Minn. 2018). "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." *Overweg*, 922 N.W.2d at 183 (quotations omitted). If the statute is unambiguous, we apply its plain meaning. *Id.*

Balsley and the state both assert that the provision is unambiguous but advocate for opposing interpretations. As noted above, Balsley argues that the phrase "previously committed" is to be interpreted as meaning that the commission of the predatory crime must have occurred before the offense in the current case was committed. The state maintains that "previously committed" requires only that the predatory crime have been committed before the fact finder determines whether the engrained-offender criteria have been satisfied in the current case. Applying a plain-language analysis, we conclude that the state's interpretation is correct.

Subdivision 3a(a)(2) provides that the district court "shall commit a person to the commissioner of corrections for" an enhanced sentence if "the fact finder determines that the offender is a danger to public safety." Minn. Stat. § 609.3455, subd. 3a(a)(2). The verb "determines" is in the present tense, signifying that the time frame for assessing whether the offender is a "danger to public safety" is the point in time when the fact finder makes that determination.

Subdivision 3a(b)(2) then provides that "the fact finder shall base its determination that the offender is a danger to public safety on," as relevant here, a finding that "the offender previously committed or attempted to commit a predatory crime." Minn. Stat. § 609.3455, subd. 3a(b)(2). The adverb "previously" means "[e]xisting or occurring before

14

something else in time or order." *The American Heritage Dictionary of the English Language* 1397 (5th ed. 2018). The use of the present tense in the phrase "the fact finder determines" in subdivision 3a(a)(2) dictates that the "something else" is the point in time when the fact finder determines whether the second criterion in subdivision 3a(a) is satisfied. We thus conclude that the plain meaning of the section is that the predatory offense must have been committed before "the fact finder determines that the offender is a danger to public safety." Minn. Stat. § 609.3455, subd. 3a(a)(2); *cf. Overweg*, 922 N.W.2d at 184-85 (interpreting the statutory phrase "has previously been convicted of").

We reject Balsley's argument that "previously committed" means committed before the offense being sentenced because it requires us to add words to the statute, which the rules of statutory construction prohibit. *State v. Jorgenson*, 946 N.W.2d 596, 607 (Minn. 2020). Moreover, if the legislature intended that the predatory crime predate the offense being sentenced, it knows how to articulate that requirement and has done just that in other enhancement provisions including other subdivisions of section 609.3455. *See, e.g.*, Minn. Stat. §§ 609.3455, subd. 1(f)-(g), .1095, subd. 1(c); *see also State v. Stevenson*, 656 N.W.2d 235, 239 (Minn. 2003) (noting that "[t]he legislature was capable of narrowing the [statutory] requirement . . . but it did not do so").

Because Balsley committed a predatory crime before the sentencing phase, the district court did not err in its determination that Balsley "previously committed" a predatory crime. The district court thus correctly found that the second criterion was satisfied.

15

## 2. Third Criterion—Engrained Behavior

The third criterion requires a finding that "the offender's criminal sexual behavior is so engrained that the risk of reoffending is great without intensive psychotherapeutic intervention or other long-term treatment or supervision extending beyond the presumptive term of imprisonment and supervised release." Minn. Stat. § 609.3455, subd. 3a(a)(3). Balsley argues that the district court's findings on this factor contain errors that undermine the court's determination that this criterion is satisfied. *See State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009) (stating that "if the district court's reasons for departure are improper or inadequate, the departure will be reversed" (quotation omitted)).

Balsley is correct that the district court's findings contain at least two misstatements. As Balsley notes, the district court's order states that there were "12 years between the two sexual offenses." This is not accurate—there were 12 years between the two sexual-offense *convictions*, not the o*ffenses*.[4] The district court's order also states that Balsley committed the offense while he was on supervised release, when he was in fact on supervised probation. We conclude, however, that these misstatements are minor and do not undermine the district court's ultimate determination.

The district court's order expressly details "[t]he overriding factors" that support its determination: "the fact that the present offense occurred while [Balsley] was on

---

[4] Balsley asserts that the first offense occurred in 2010, but the presentence investigation report and copy of the conviction submitted into evidence list the offense date as January 2007 and state that Balsley was convicted in 2010. The record also reflects that the investigation into the offense began in January 2010 and the conduct at issue spanned several months, but the exact time frame is unclear. Thus, between five and eight years passed before the 2015 offense, not 12.

supervised release and [that Balsley was] unable and unwilling to meaningful[ly] engage in sex offender treatment[, one of the conditions of his probation,] despite being under supervision for over a decade." The district court stressed that "[t]his failure led to [Balsley] perpetrating nearly an identical [sexual-assault] crime against another [child] victim years later."

These "overriding factors" are fully supported in the record. At the time of sentencing, Balsley had been under supervision for over a decade, but never completed the sex-offender programming that was a required condition of his probation. Indeed, the psychosexual evaluation notes that Balsley was discharged from sex-offender programming no fewer than 11 times between 2011 and 2019 for noncompliance with program requirements. And despite being on supervised probation, Balsley reoffended by committing a strikingly similar crime—the sexual assault of the prepubescent daughter of a woman he was dating while the child was staying at his house.

The district court therefore did not abuse its discretion in sentencing Balsley to an upward durational departure as an engrained offender under Minn. Stat. § 609.3455, subd. 3a.

## III. The district court properly imposed a lifetime period of conditional release.

Finally, Balsley argues that the district court erred in imposing a lifetime period of conditional release because Balsley was charged by complaint, not indictment. Balsley asserts that a lifetime period of conditional release should be treated in the same manner as a punishment of life imprisonment. He maintains that the district court therefore lacked the authority to impose a lifetime period of conditional release under Minn. R. Crim.

17

P. 17.01, subd. 1, which provides that "[a]n offense punishable by life imprisonment must be prosecuted by indictment."

This court recently addressed this exact issue in *State v. Snyder*, and held: "The imposition of a lifetime period of conditional release does not constitute a punishment of life imprisonment for purposes of [Minn. R. Crim. P. 17.01, subd. 1], and the underlying offense need not be prosecuted by indictment." 984 N.W.2d 590, 591 (Minn. App. 2023), *rev. granted* (Minn. Mar. 28, 2023). *Snyder* squarely addressed and rejected the same argument Balsley now advances.

Balsley acknowledges this court's decision in *Snyder* but urges us to reconsider our holding in light of the supreme court's grant of review. We are bound by our precedential opinion in *Snyder* and leave the determination of whether it was wrongly decided to the supreme court. *See State v. Chauvin*, 955 N.W.2d 684, 695 (Minn. App. 2021) (holding "that a precedential opinion of this court is binding authority for this court and district courts immediately upon its filing"), *rev. denied* (Minn. Mar. 10, 2021).

## DECISION

On this record, we affirm Balsley's convictions and sentence. We discern no unusual circumstances that would justify reversing the district court's determination that E.B.'s testimony was credible and conclude that the evidence presented at trial is sufficient to sustain the guilty verdicts. The district court erred in determining that Balsley was eligible to be sentenced as a dangerous offender, but we affirm the district court's sentencing of Balsley as an engrained offender. And because our decision in *Snyder*

18

remains binding authority, unless modified or reversed by the supreme court, the district court did not err in imposing a lifetime period of conditional release.

**Affirmed.**